ESTATE OF SCHMITZ: McKENZIE and another, Appellants, v. CUTTER, Executor, and others, Respondents.

*September 6—October 2, 1962.*

413

415

416

For the appellants there was a brief and oral argument by *Lorin L. Kay* of Richland Center.

For the respondents there was a brief and oral argument by *Frank D. Hamilton* of Dodgeville.

WILKIE, J. 1. *Was the "contract to make a will" ambiguous?* The first question to be determined on this appeal is whether the "contract to make a will" is ambiguous. The general rule on whether a contract is to be considered ambiguous is well stated in 12 Am. Jur., Contracts, p. 752, sec. 229:

"It has been said that it is only where the language of a contract is ambiguous and uncertain and susceptible of more than one construction that a court may, under the well-established rules of construction, interfere to reach a proper construction and make certain that which in itself is uncertain. Where the terms of a writing are plain and unambiguous, there is no room for construction, since the only office

of judicial construction is to remove doubt and uncertainty. In such a case the courts have no right to make new contracts for the parties or ignore those already made by them, simply to avoid seeming hardships."

In the first paragraph the testatrix expressly agrees to will to each of the seven adult children a "one-tenth (1/10) interest in the property that I shall own at the time of my death after the payment of specific bequests and my just debts and expenses of administration."

But the whole second paragraph attempts to spell out her intent and purpose in contracting to make a will. She refers to the two other instruments executed by the seven children on that date when she provides:

"It is the intent and purpose of this contract to fulfil the agreements made this date between the said heirs-at-law herein."

Further she states:

"They have assigned their interest to me in order that I might have the full income and enjoyment of said property and on my part they shall be entitled to the remainder of such property at the time of my death."

The fact that she had special plans for her own property that she had acquired over and beyond that assigned and quitclaimed to her by the seven children and beyond that inherited by the laws of descent from her deceased husband is demonstrated by the last sentence of her contract which is as follows:

"In the event that any property is added to my estate in addition to that made the subject of this contract it is agreed that I shall be free to bequeath that property to such person or persons as I shall designate."

We conclude that the "contract to make a will" is patently ambiguous. If the parties had deliberately tried to make it ambiguous they could not have done more. Clearly

the contract is obscure and its provisions are subject to more than one reasonable interpretation.

If the second paragraph is to be given any significance at all the contract must be considered ambiguous. For example, what is intended by the term "remainder of such property" as used in the second sentence of the final paragraph? Obviously if it refers just to the property that the seven children quitclaimed and assigned to the widow it is inconsistent to provide for returning it to the seven and at the same time under paragraph one, prescribe the willing of a one-tenth interest in her entire estate at death.

Or, what is intended by the provision in the last sentence that, "In the event that any property is added to my estate in addition to that *made the subject of this contract* . . . ?" If this sentence is to be given any meaning certainly there was some property the testator was going to be free to bequeath any way she wished.

*2. Trial court's construction of contract to make a will and testatrix's will.* The lower court properly considered the contract to be ambiguous and properly construed the contract. Of course, the primary aim of the trial court was to ascertain the intent of the parties. *Hoffman v. Eastern Wisconsin R. & L. Co.* (1908), 134 Wis. 603, 115 N. W. 383. It was proper for the trial court to look at all three documents executed together and at the same time. *Bank of Sheboygan v. Fessler* (1935), 218 Wis. 244, 260 N. W. 441.

It is true that ambiguous wording in a contract must be construed most strongly against the person who prepared it (Lucille A. Schmitz). *Ebenreiter v. Freeman* (1956), 274 Wis. 290, 79 N. W. (2d) 649; *Megal v. Kohlhardt* (1960), 11 Wis. (2d) 70, 103 N. W. (2d) 892; *Strong v. Shawano Canning Co.* (1961), 13 Wis. (2d) 604, 109 N. W. (2d)

355. However, this rule must give way to the basic rule of construction which demands that a contract be construed as a whole in order to carry out the true intent of the parties. This is precisely what the trial court endeavored to do here. *Ketay v. Gorenstein* (1952), 261 Wis. 332, 53 N. W. (2d) 6; *Crolius v. Lorge* (1927), 192 Wis. 130, 212 N. W. 253.

Applying these proper rules of construction the court, in considering the three documents executed on October 31, 1957, the will, and the stipulation between the parties, reached the conclusions embodied in his decision and then in his formal findings, conclusions, and decree. Under this interpretation:

(a) The claimants and the five other adult children are to get back in kind the real-estate interest that they conveyed, the same real estate still being on hand in the estate of Lucille A. Schmitz. They are to be the beneficiaries of any increment in value of their share in the real estate and the executor is not to be required to sell all of the real estate and repay them in dollars only to the extent of the share in the real estate that they inherited from their father.

(b) Assuming the funds are available, the seven children are also to receive in kind the personal-property interest which they assigned to Lucille A. Schmitz.

(c) All of the real-estate interest and the interest in personalty that she received by operation of the laws of descent as an inheritance from her husband was to be ascertained and after first deducting her just debts, funeral expenses, and expenses of administration, the remainder was to be divided in 10 equal portions between all 10 children including the claimants. The exact extent of such property, the source of each item, and the amount to be available to each of the 10 children is not settled by the trial court and is yet to be determined.

(d) Finally, the trial court ruled that there would be some property of Lucille A. Schmitz that would be her own and that would not have been acquired either by quit-claim and assignment by the children under the conveyances of October 31, 1957, or acquired as an inheritance from her husband. It is this property that the trial court interprets the testatrix to be free to devise, as she did, to her own seven children (including the three minors). The extent of this property, the source of each item, and the amount available to each one of those seven has not been determined by the trial court.

To carry out the court's interpretation under (b), (c), and (d), as relating to the personal property in the estate of Lucille A. Schmitz, the court should first determine what items of personal property are traceable to additional property (such as the proceeds of life insurance) which, as provided under (d), the testatrix was free to devise as she saw fit. The court should then determine the items of personalty that are traceable to those assigned to the testatrix by the seven adult children and then these items are to go to such children, together with any increase in value, all in accordance with (b) above. Any balance of personal property should then be subject to distribution to all 10 children in accordance with (c).

It is our conclusion that the findings of fact and conclusions of law, as made by the trial court, are not contrary to the evidence and contain no error of law except as stated below.

The first error of law is that the court declares, as stipulated by the parties, "that the will of Lucille A. Schmitz, insofar as it is contrary to the agreement of October 31, 1957, is invalid and inoperative." A will properly executed (as here) and admitted to probate (as here) cannot be held to be "invalid." What the parties and court undoubtedly

meant here was that the will was valid but that provisions in that will that were contrary to the agreement gave rise to a claim of breach of contract on behalf of the claimants.

The second error of law is contained in paragraph number 7 of the decree. As pertinent here the decree provides as follows:

"5. The contract to make will, assignment, and quitclaim deed dated October 31, 1957, are all parts of one and the same transaction; in and by the same

"(a) Lucille A. Schmitz was to have only the use and enjoyment, during her lifetime, of the respective shares received by said adult children from the estate of Leo M. Schmitz, deceased, and by them assigned and transferred to her.

"(b) The said Lucille A. Schmitz for a good and valuable consideration was obligated to execute a will wherein and whereby the said claimants and the said five (5) other adult children of Leo M. Schmitz were to receive in kind, if the same were in existence at the time of the death of Lucille A. Schmitz, the respective interests in real estate and personal property conveyed or assigned by them to Lucille A. Schmitz;

"(c) After such specific bequests and devises as set forth in the preceding paragraph hereof, the said Lucille A. Schmitz, for the same consideration, was further obligated in said will so to be executed by her to provide that all ten (10) children of Leo M. Schmitz, including the claimants, should share equally in all other property, real or personal, received and inherited by said Lucille A. Schmitz under the laws of descent in the estate of Leo M. Schmitz, deceased;

"(d) The said Lucille A. Schmitz reserved the right to bequeath and devise to such person or persons as she might designate any other property owned by her at the time of her death which she had not inherited under the laws of descent from the estate of Leo M. Schmitz, deceased.

"6. No conversion of the real property received by Lucille A. Schmitz, deceased, under the assignment or quitclaim deed of October 31, 1957, took place and the whole of said

property was intact in the possession of said Lucille A. Schmitz at the time of her death.

"7. The will of Lucille A. Schmitz, deceased, is construed to be in conformity with the construction of the 'Contract to Make a Will' dated October 31, 1957, in that the said Lucille A. Schmitz intended that after '. . . the payment of my just debts, funeral expenses, and expenses of administration . . .' the distribution of her estate should be in accordance with the determination made in paragraphs 5 (a) to 5 (d), inclusive, herein;

"In the event that any of the 10 heirs named herewith was indebted to Lucille A. Schmitz at the time of her death, such indebtedness, as provided in said will, should be either collected by the executor of the estate of Lucille A. Schmitz, deceased, or if not so collected by the executor, shall be deducted by the executor from the distributive share of such heir."

The above-quoted provision of the paragraph numbered 7 should be stricken since the will obviously cannot be construed to be in accordance with the contract as interpreted by the court under paragraph 5. As far as these claimants are concerned everything they are going to receive, whether in property or otherwise, they will be receiving as claimants realizing a recovery on their claims and because of a breach of the contract to make a will. They will not be receiving this property or any other amount as legacies. Accordingly the paragraph numbered 7 should be changed to read as follows:

"7. The will of Lucille A. Schmitz, deceased, is contrary to the terms of the contract to make a will dated October 31, 1957, as interpreted by the court under paragraph 5 above and to this extent is inoperative and the amounts or property received by claimants in accordance with paragraph 5 shall be allowed as claims and shall be allowed out of the assets of the estate prior to any distribution of legacies. The amounts paid out under paragraph 5 (c) shall be determined after first deducting '. . . the payment

of my just debts, funeral expenses, and expenses of administration.' "

The unnumbered second paragraph of paragraph 7 should be changed by inserting the words "claim or" before the words "the distributive share" in the last clause.

3. *The decree of the trial court.* This leads us to consider the final contention of the appellants here, that the trial court, in its decree, failed to enter a judgment on the appellants' claims. The decree entered here is no doubt an interlocutory judgment in that it does not finally determine the amount that should be paid by the executor to each of the two claimants. This was unavoidable since the court had not determined the amount of property in each category. However, as far as the respective rights of the claimants and all of the other children are concerned, the trial court has adjudicated these rights. Further proceedings should be held before the lower court to reduce his decree to final judgment in terms of the actual amounts to be allowed under the claims and the amounts to be distributed to the legatees.

*By the Court.*—The judgment entered by the trial court is modified as provided in the opinion and, as so modified, affirmed.