Farley and another, Respondents, v. Salow, Appellant.*

*No. 438. Argued March 5, 1975.—Decided March 28, 1975.*
(Also reported in 227 N. W. 2d 76.)

---

* Motion for rehearing denied, with costs, on June 3, 1975.

394

For the appellant there were briefs by *Robert A. Christensen* and *Foley & Lardner,* all of Milwaukee, and oral argument by *Mr. Christensen.*

For the respondents there was a brief by *Ray T. McCann* and *Russell M. Darrow,* both of Milwaukee, and oral argument by *Mr. McCann.*

HANLEY, J. Two issues are presented upon this appeal:

1. Is the subject contract, taking all internal references into account, so ambiguous as to require reference to the last resort principle of construction against the party who prepared it?

2. Should damages based on the value of a sum to be paid over time be reduced to the present value of the future payments?

*The agreement.*

The agreement in question here basically provides that additional consideration will be paid to the plaintiffs if

the entire control of Spincraft passes from the present owners to a third party as a result of Spincraft being sold, merged or consolidated. Pargaraph 2 provides:

"2. *Escrowed Stock.* The provisions of the paragraph last above shall effect all stock of Spincraft, Inc., covered by the purchase agreement, which bears even date herewith, and which stock is in the possession of First National Bank of Waukesha as Escrow Agent at the date of such sale."

The part of this paragraph which was found to be ambiguous and subject to construction by the trial court is the last phrase "which stock is in the possession of First National Bank of Waukesha as Escrow Agent at the date of such sale." This phrase is ambiguous because "date of such sale" could refer to the date of the sale by the defendant to a third party.

The defendant's position is that "such sale" refers to a sale to a third party and additional compensation would only be due for the number of shares still held by the escrow agent for which payment had not been made. Under this view the plaintiffs would be entitled to nothing because at the time of closing of the sale to Standard International, all of the stock had been transferred to the defendant by the escrow agent after payment in full therefor had been made. *See: Dittman v. Nagel* (1969), 43 Wis. 2d 155, 163, 168 N. W. 2d 190.

The plaintiffs, on the other hand, argue that the "date of such sale" referred to in that phrase refers to the date of the purchase agreement, April 19, 1967. Under this view which was accepted by the trial court the plaintiffs are entitled to one third of the difference in the prices per share for all of the stock sold by them to the defendant.

The defendant contends that the trial court should not have applied the rule of construction that an ambiguous contract must be construed most strongly against the person who prepared it. Defendant contends that the record is not clear that Attorney Lowry was acting solely

as the defendant's attorney when the document was prepared, although in his brief he admits that there is no question that Lowry prepared the agreement at his request. The defendant testified that Mr. Lowry was his attorney, but Mr. Lowry testified that in the past he had represented Mr. Farley, Mr. Salow and Spincraft. The defendant argues that it is manifestly unfair to apply a rule based upon the assumption that Lowry was acting adversely to Mr. Farley. However, this assumption is supported by the fact that in the supplemental agreement involving the sale by the Farley children, the attorney had no problem in specifying in the agreement the cutoff date of April 19, 1971. Ambiguity was avoided in that agreement.

Whether or not Lowry was acting for the defendant in this transaction was a question of fact to be decided by the finder of fact.

"This court has often held that the findings of a trial court without a jury will not be upset on appeal unless they are contrary to the great weight and clear preponderance of the evidence; . . . *Navine v. Peltier* (1970), 48 Wis. 2d 588, 596, 180 N. W. 2d 613. . . ." *Milbauer v. Transport Employes' Mut. Benefit Society* (1973), 56 Wis. 2d 860, 862, 203 N. W. 2d 135.

The finding of the trial court that the agreement was prepared by Lowry for and on behalf of the defendant is not against the great weight and clear preponderance of the evidence.

The defendant also argues that the rule of construction adopted by the trial court should not have been applied because it should only apply as a last resort. This court has said:

"It is true that ambiguous wording in a contract must be construed most strongly against the person who prepared it . . . . *Ebenreiter v. Freeman* (1956), 274 Wis. 290, 79 N. W. (2d) 649; *Megal v. Kohlhardt* (1960), 11 Wis. (2d) 70, 103 N. W. (2d) 892; *Strong v. Shawano*

*Canning Co.* (1961), 13 Wis. (2d) 604, 109 N. W. (2d) 355. However, this rule must give way to the basic rule of construction which demands that a contract be construed as a whole in order to carry out the true intent of the parties. . . ." *Estate of Schmitz* (1962), 17 Wis. 2d 412, 419, 420, 117 N. W. 2d 249.

The defendant proceeds to set forth other rules of construction which are claimed to be better indicators of the parties' intent.

The first rule relied upon by the defendant is that a contract should be construed so as to give a reasonable meaning to every part of the contract. In *Carey v. Rathman* (1972), 55 Wis. 2d 732, 737, 738, 200 N. W. 2d 591, this court said:

"In ascertaining the meaning of a contract, the court may look to the consequences which would result should it adopt one construction as opposed to another, because where there is ambiguity the more reasonable meaning should be given on the probability that persons situated as the parties were would be expected to contract in that way as opposed to a way which works an unreasonable result. *Wisconsin Employment Relations Bd. v. Gateway Glass Co.* (1953), 265 Wis. 114, 60 N. W. 2d 768. While a court cannot engage in equitable redrafting of contracts, a construction which makes a contract reasonable, fair and just will be given over one making the contract unusual or extraordinary, if equally consistent with the language used. *Bank of Cashton v. La Crosse County Scandinavian Town Mut. Ins. Co.* (1934), 216 Wis. 513, 257 N. W. 451."

According to the defendant, by reading the agreement and the purchase agreement together, a reason which is probable and reasonable becomes clear. That reason is said to be that the plaintiffs would have wanted to receive some benefit in the event the defendant sold the stock before he paid for it. Therefore, a reasonable view would be that the additional compensation would only apply to the stock still held by the escrow agent.

This argument is based in part on the assertion that the record discloses no separate consideration was paid for the agreement. However, the agreement itself provides that there was consideration of "One ($1.00) Dollar and other good and valuable considerations." The agreement was also under seal. *See:* Sec. 891.27, Stats. Also, the agreement was signed the same day that the purchase agreement was signed, by the same parties in the course of the same transaction. The general rule is that such instruments will be construed together. *Wipfli v. Bever* (1967), 37 Wis. 2d 324, 326, 155 N. W. 2d 71. The purchase agreement provided for a purchase price of $10 per share which was the same price as provided for in the one year option of May 13, 1966. While the plaintiffs received the benefit of receiving payment for all of their stock within a shorter period of time, they lost the benefit of having the price annually reviewable at market value. The transaction involved here also involved transactions between relatives.

While the interpretation given to the agreement by the defendant is a reasonable one, we think a more reasonable interpretation is that the plaintiffs wanted to share in any benefits resulting from a sale, merger or consolidation of Spincraft. Such sale, merger or consolidation reveals the true market value of their shares.

The defendant also points out that a construction which avoids a contract of indefinite duration is preferable. *Kovachik v. American Automobile Asso.* (1958), 5 Wis. 2d 188, 92 N. W. 2d 254. If the plaintiffs' construction is accepted it will result in a contract of indefinite duration. However, when this is true, this court will imply a reasonable time for performance. *Delap v. Institute of America, Inc.* (1966), 31 Wis. 2d 507, 512, 143 N. W. 2d 476. The defendant contends that (1) by the phrase "at the date of such sale" the parties obviously addressed themselves to the time issue and (2) the only possible

standards of a "reasonable time" coincide with the defendant's construction, pointing out that the "Supplemental Guarantee" to the plaintiffs' children provided for additional compensation if the sale, merger or consolidation took place prior to April 19, 1971. The first argument here is only valid if the defendant's position is accepted. However, the unanswered question is still here. Why didn't the defendant's counsel insert April 19, 1971, in the Farley agreement as the cutoff day as was done in the children's "Supplemental Guarantee?" The second argument is contrary to Farley's testimony where he said his agreement was not to have a date. Also, under the circumstances and the relationship of the parties, an indefinite but reasonable duration would not necessarily be an unreasonable construction and three weeks after the date scheduled for final payment is not unreasonable.

Another rule of construction recognized by this court is that, other things being equal, a construction which gives effect to every word of a contract should be preferred to one which results in surplusage. *McCullough v. Brandt* (1967), 34 Wis. 2d 102, 106, 148 N. W. 2d 718. Because all of the stock covered by the purchase agreement was already said to be effective in the first clause of paragraph 2 of the agreement, it is contended that the plaintiffs' construction would result in surplusage. Applying the reasonable man test in Restatement, *Contracts,* sec. 230, based on the intention of the parties expressed in other parts of the agreement, the ambiguous words are merely additional words of description. The defendant's final argument is that a word used by the parties in one sense is to be interpreted as employed in the same sense throughout the writing in the absence of countervailing reasons. *See: Shuford Development Co. v. Chrysler Corp.* (5th Cir. 1971), 449 Fed. 2d 429, 436, and 17A C. J. S., *Contracts,* p. 150, sec. 303. The defendant points out that in the agreement the transaction

between plaintiffs is referred to as a "purchase agreement for the sale" of the plaintiffs' stock. However, the heading to paragraph 1 of the agreement refers to "Sale of Spincraft, Inc.," and the "sale price" referred to in that paragraph obviously refers to the sale of Spincraft. The questioned reference to "such sale" is said to be a reference to that sale. It is further pointed out that the purchase agreement was an agreement to sell and not a sale, *see, Dittman v. Nagel, supra,* and that an attorney drafting an agreement like this would use the proper term.

On the other hand, the purchase agreement provides that the plaintiffs "will sell" refers to the "sale of stock" in the heading of paragraph 1 and to an installment sale in paragraph 3. As noted, the purchase agreement and the agreement are to be construed together. *Wipfli v. Bever, supra.*

In *Moran v. Shern* (1973), 60 Wis. 2d 39, 48, 49, 208 N. W. 2d 348, this court said:

"Since there is ambiguity in the agreement, two further rules are brought into operation: (1) Where ambiguity is found extrinsic circumstances may be resorted to in order to ferret out the intent of the parties; and (2) it is well recognized in this jurisdiction that ambiguous agreements are to be construed most strongly against the maker or drafter."

It is further stated, at page 54, that:

". . . The drafter, an attorney, ought to have been capable of adequately drafting the document to reflect a 60/40 percent split of the profits computed *after* construction of multi-unit family dwellings or after the sale of lots to such building constructors. His inability to do so, if such were indeed the intent, should not be held against the nonlawyer nondrafter."

Additionally, the omission of words' may be a consideration in construing a contract.

"Canons of construction are designed to aid courts in ascertaining the intention of the parties. Normally the words used by the contracting parties are the best indicators of their intention. Occasionally words not used are also instructive. . . . We cannot ignore the draftsman's failure to use an obvious term, especially where it is the draftsman who is urging a tenuous interpretation of a term in order to make it applicable to a situation which would clearly have been covered if the obvious term had been chosen." *North Gate Corp. v. National Food Stores* (1966), 30 Wis. 2d 317, 323, 140 N. W. 2d 744.

Here the defendant's position is that "such sale" refers to the sale contemplated in paragraph 1 of the agreement. That paragraph provides that additional compensation will be paid in the event Spincraft is "sold, merged or consolidated." If the defendant's position is indeed what the parties intended, there are a number of ways in which that could have been clearly achieved. Defendant's counsel could have used the phrase "such sale, merger or consolidation" instead of merely using the phrase "such sale."

We conclude that the trial court's application of the rule of construing an ambiguous contract most strongly against the drafter was proper under the facts of this case.

*Damages.*

The defendant argues, for the first time on appeal, that the trial court should have adjusted the judgment to reduce the notes received from Standard International to their present value. This argument is based on the fact that the computation of damages was based on the face amount of the notes ($2,000,000), while the notes are actually not worth their face amount because the payments on them will be made over a period of years with the final payment due in 1991. Therefore, the present value of the notes at the time of the sale of the Spin-

craft stock rather than the face amount of the notes is the appropriate measure of the "sale price" referred to in the agreement. We do not agree.

In any event, this question was not raised in the trial court, either in the pleadings or at trial. The trial court's determination of damages was based on computing one third of the difference between the $10 paid to the plaintiffs by the defendant and the $50.47 per share received by the defendant in the sale of stock to Standard International. No other evidence as to the value of the consideration paid by Standard International was introduced other than the agreement between it and the defendant and the "closing memorandum."

This court has recently said in *Terpstra v. Soiltest, Inc.* (1974), 63 Wis. 2d 585, 593, 218 N. W. 2d 129, that:

"The practice of this court is not to consider an issue raised for the first time on appeal.

"In *Cappon v. O'Day* (1917), 165 Wis. 486, 490, 162 N. W. 655, this court pointed out:

" 'The reason for the rule is plain. If the question had been raised below, the situation might have been met by the opposite party by way of amendment or of additional proof.'

" . . .

"It is true that we may in a proper case consider new issues for the first time on appeal. The question is one of judicial administration and policy, and not one of power. *State ex rel. General Motors Corp. v. Oak Creek* (1971), 49 Wis. 2d 299, 319, 182 N. W. 2d 481; *Cappon, supra,* page 491."

We are of the opinion that the trial court applied the proper measure of damages. The contract itself determined the value of the shares sold to Standard International by the defendant.

*By the Court.*—Judgment affirmed.