GOEBEL, and others, Respondents, v. FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF RACINE, Appellant.

*No. 76–074.   Argued May 3, 1978.—Decided June 6, 1978.*
(Also reported in 266 N. W. 2d 352.)

For the appellant there were briefs by *Thompson & Coates, Ltd.*, and oral argument by *James W. Hill*, all of Racine.

For the respondents there was a brief and oral argument by *James N. Youngerman* of Madison.

CONNOR T. HANSEN, J. The facts in the case are not in dispute. Although First Federal is a federally

regulated institution, *see: Kaski v. First Fed. S. & L. Asso. of Madison,* 72 Wis.2d 132, 240 N.W.2d 367 (1976), the resolution of the instant controversy depends on the interpretation of the note and mortgage as a matter of state contract law.

On May 29, 1964, the plaintiffs, as mortgagors, executed a mortgage in favor of First Federal, as mortgagee, in the amount of $17,000, with interest at six percent annually, payable in monthly installments.

The note contained the following interest rate adjustment provision:

". . . The interest for each month shall be calculated upon said unpaid balance due as of the last day of the previous month at the rate of 6 per cent per annum or such other rate of interest on unpaid balances as may be fixed by the Association from time to time at its option, provided however, that the Association may not change the rate of interest except at any time after three years from the date hereof, and then upon 4 months or more written notice to the Promissors. Notice shall be deemed received when the same is deposited in the United States mail, postage prepaid, addressed to the Promissors at their last address as it appears on the record of the Association. The Promissors upon receiving notice of such change may repay the entire balance due on this obligation during said 4 months period without penalty. Any change in the rate of interest shall be endorsed on this mortgage note by the Association, stating the effective date of such change, the balance then due, and the new rate."

The plaintiffs do not contest the legality or the conscionableness of such a provision.[1] However, they argue that in the instant case, First Federal is precluded, by other provisions of the mortgage note, from effectuating an interest rate increase either by increasing the term of

---

[1] Because of the changing economic conditions prevailing in this country, the necessity for interest adjustment clauses in long-term loans has been recognized. *Security S. & L. Asso. v. Wauwatosa Colony,* 71 Wis.2d 174, 180, 237 N.W.2d 729 (1976). *See:* sec. 138.055, Stats.

the note or by increasing the amount of the monthly installments. As completed, the note obligated the plaintiffs to pay to First Federal:

". . . the principal sum of <u>Seventeen Thousand and 00/100</u> Dollars, <u>($17,000.00)</u> and such additional sums as may be subsequently advanced hereon to the Promissors and Mortgagors by the ASSOCIATION, together with interest as hereinafter provided, until such loan shall have been fully paid; such principal and interest payable in monthly installments of <u>One Hundred Ten Dollars</u> Cents, <u>($110.00)</u> on or before the <u>10th</u> day of each and every month, commencing <u>January 10, 1965;</u> said principal and interest, including advances, notwithstanding any other provisions in this note or the mortgage given as collateral security, shall be paid in full within <u>25</u> years from the date hereof, and in the event of an additional advance hereon over and above the principal sum stated above, such monthly installments shall be adjusted to conform to this provision."

In September, 1973, First Federal notified the plaintiffs that as a result of unfavorable economic conditions, the interest rate on their loan would be increased from six percent to eight percent, effective February 1, 1974. In November, 1973, the plaintiffs were informed that the new rate would be seven percent rather than eight percent and that they could elect to absorb the increased interest expense either by paying an additional $7.49 per month or by extending the term of their loan approximately two years. The plaintiffs did not reply to this letter, and they continued to make monthly payments of $110.

Affidavits submitted in support of the motions for summary judgment allege that First Federal has increased the interest rate of 488 borrowers whose mortgage notes were executed on forms identical to that completed by the plaintiffs, and that 119 of these borrowers have elected to pay larger monthly installments to absorb the increase in interest rates.

This action was commenced by the plaintiffs, as a class action, on behalf of themselves and all others similarly situated. They argue that the terms of their note preclude any alteration by First Federal that would either increase the amount of their monthly payments or extend the term of their loan to accommodate an increased interest rate. The issues presented on appeal are whether the terms of the mortgage note permit First Federal to increase the interest rate by increasing the amount of the monthly installments or by extending the term of the loan[2] and whether the case can proceed as a class action.

Whether First Federal can increase the amount of the plaintiffs' monthly payments so as to absorb a higher interest rate rests, to a significant extent, on the principle of *expressio unius est exclusio alterius*. Under this principle, a specific mention in a contract of one or more matters is considered to exclude other matters of the same nature or class not expressly mentioned, even when all such matters would have been inferred had none been expressed. Corbin on Contracts (hornbook ed., 1952), sec. 554, p. 522; *First Wisconsin Trust Co. v. Perkins*, 275 Wis. 464, 82 N.W.2d 331 (1957); 17A C.J.S., *Contracts*, sec. 312, pp. 171–173.

The mortgage documents leave no doubt as to the right of the mortgagee to increase monthly payments to accom-

[2] A third possible method of implementing an interest rate adjustment clause is referred to as the use of a balloon payment. Under this method, monthly payments would continue to be made in the original amount, but would be applied against principal and interest to reflect the increased rate of interest. Upon expiration of the original term of the loan, a lump-sum, balloon payment, in the amount of the then-outstanding principal balance, would be collected. Balloon payments are subject to federal regulation. 12 CFR 541.14(a), as amended by 37 Fed. Reg. 5118 (1972). However, this method was not used in the instant case, and therefore we do not address it.

modate repayment of future advances and the lender's cash expenditures to protect its security interest. With equal clarity, the draftsman could have provided the same express means to accommodate the interest escalation clause. Other mortgage notes introduced in evidence did so by providing that interest could be increased or decreased with a corresponding adjustment in the required monthly payments.

The note specifically states that First Federal may advance additional sums to the borrowers and provides that ". . . in the event of an additional advance hereon over and above the principal sum stated above, *such monthly installments shall be adjusted to conform to this provision.*" (Emphasis added.) In addition, the note authorizes First Federal to protect its security interest in the mortgaged property by paying taxes, purchasing insurance, making repairs or discharging any encumbrance upon the premises, and the note requires the borrowers to repay any such outlays "upon demand" by First Federal. The trial court concluded that First Federal's right to be repaid for such disbursements "upon demand" necessarily embraces a right to forego immediate repayment and instead to increase the borrower's monthly payments to recoup the outlays.

The mortgage note fails to make similar provision for an increase in payments when the interest rate is raised. The trial court interpreted this omission to demonstrate that no such increase was contemplated. This conclusion is supported by the decision of this court in *Godfrey v. Crawford,* 23 Wis.2d 44, 50, 126 N.W.2d 495 (1964), where this court stated that in some cases such an omission "might well be the decisive factor. . . ."

In *Farley v. Salow,* 67 Wis.2d 393, 227 N.W.2d 76 (1975), this court relied on the inclusion of an express cut-off date in one contract as a basis for refusing to imply such a cut-off date in a related, contemporaneous

contract drafted by the same lawyer. It was observed in *Farley, supra,* that the omission of words from a contract is sometimes instructive. The court quoted from *North Gate Corp. v. National Food Stores,* 30 Wis.2d 317, 323, 140 N.W.2d 744 (1966), where it was said that:

"... 'We cannot ignore the draftsman's failure to use an obvious term, especially where it is the draftsman who is urging a tenuous interpretation of a term in order to make it applicable to a situation which would clearly have been covered if the obvious term had been chosen.'" *Farley, supra,* at 405.

This observation reflects the general rule that ambiguous contract language must be construed against the drafter. *Garriguenc v. Love,* 67 Wis.2d 130, 226 N.W.2d 414 (1975); *Moran v. Shern,* 60 Wis.2d 39, 208 N.W.2d 348 (1973); *North Gate Corp., supra; Marion v. Orson's Camera Centers, Inc.,* 29 Wis.2d 339, 138 N.W.2d 733 (1966). This rule has particular force where, as here, there is a substantial disparity of bargaining power between the parties, and a standard form is supplied by the party drafting the form.

Applying these principles to the instant case, the trial court properly held that the failure to provide explicitly for an increase in monthly payments to absorb an interest increase demonstrated that no such increase was contemplated by the parties. The trial court stated:

"... The contract does not leave to implication the right of the mortgagee to increase the monthly installment amounts to accomodate [sic] the repayment of future advances, and the lender's outlays to protect the security interest. With a stroke of the pen the draftsman could have provided the same express means for accomodating [sic] an interest rate escalation. Thus, while a court might be willing to imply a right to increase monthly payments in order to effectuate the escalation

clause if there were no mention of such a right anywhere in the contract, the express mention of such a right in conjunction with other provisions provides potent evidence that such a right was not intended to be left to implication by the parties."

As the trial court emphasized, the amount of the monthly payments is a consideration of vital importance, and perhaps the single most important consideration, to a potential borrower. It is the factor most directly related to the possibility of default; it is the figure to which a buyer looks to determine whether he can afford to purchase a home and to which the lender looks to determine whether the borrower is capable of repaying the loan. For this reason, a provision empowering the lender to unilaterally increase the amount of the monthly payments, perhaps thereby threatening the borrower with default, will not lightly be inferred, particularly where express provision has been made for such an increase under other circumstances, and where such a provision could easily have been inserted by First Federal. If any increase in this figure was intended to be authorized by the loan contract, such authority should have been expressly stated.

The omission of any reference to increased payments to reflect a higher interest rate precludes the unilateral increase of the amount of the monthly payment.

The second aspect of this issue is whether the mortgage note permits First Federal to effect an increase in the interest rate by extending the term of the loan instead of increasing the amount of the monthly payments.

The mortgage note provides that:

". . . principal and interest, including advances, notwithstanding any other provisions in this note or in the mortgage given as collateral security, shall be paid in full within 25 years from the date hereof, . . ."

The number "25" inserted in the form by First Federal represents the term necessary to retire the loan at the original interest rate and with monthly payments in the amount specified in the note. The twenty-five year limitation therefore affords no leeway for extension of the loan term to absorb the higher interest rate. The manifest intention that all interest and principal be paid within twenty-five years "notwithstanding any other provisions in this note or the mortgage" is unmistakable, and this court is not at liberty to disregard the plain meaning of the language chosen by the draftsman for First Federal and agreed to by the parties. *Stack Construction Co. v. Chenenoff,* 28 Wis.2d 282, 287, 137 N.W.2d 66 (1965).

First Federal argues, however, that it may elect to waive this requirement on the theory that either party to a contract may waive provisions of the contract included for his benefit. *Fun-N-Fish, Inc. v. Parker,* 10 Wis.2d 385, 103 N.W.2d 1 (1960); 17A C.J.S., *Contracts,* sec. 491, pp. 688, 689; 17 Am. Jur.2d, *Contracts,* sec. 390, p. 385.

Such a waiver may not be made, however, where the waiver would deprive the non-waiving party of a benefit under the provision in question. Thus in *Godfrey v. Crawford, supra,* at 49, 50, this court permitted a buyer under a land contract to waive a condition with respect to approval of a rezoning proposal when, at the time the waiver was exercised, a waiver would not interfere in any way with the benefits afforded the sellers under the contract and where "the defendant sellers' protection . . . [was not] weakened in the slightest degree" by the decision to permit the waiver. That is not the case here.

First Federal argues that the provision limiting the term of the loan to twenty-five years was included solely for the benefit of First Federal, and that it serves only

to permit First Federal to insist that the entire debt be paid within the specified term. First Federal thus argues that it should be able to waive the provision and thereby extend the term of the loan.

However, the fact is that whether the amount of the monthly payment is increased or the term of the loan extended, the mortgagor pays more money and the mortgagee collects more interest than the amount specified in the original note and mortgage. Therefore it cannot be said the provision limiting the term to twenty-five years "notwithstanding any other provisions" is solely for the benefit of First Federal.

Since we have heretofore determined the lender is precluded by the language of the note from increasing the amount of the monthly payments, it follows that the maximum loan term provision is of considerable import to the borrower. When viewed in conjunction with the lender's inability to raise the amount of the monthly payments, this provision may in many cases relieve a borrower of the obligation to pay any additional sum for increased interest.

In such a situation, the provision would operate to the distinct benefit of the borrower. For this reason, the provision is not subject to waiver by First Federal. Therefore, a unilateral extension of the loan term by First Federal would violate the terms of the contract.

First Federal could easily have avoided this result by using a longer loan term than twenty-five years.[3] Precisely this point was made by the author of a Note entitled *Adjustable Interest Rates in Home Mortgages: A Reconsideration,* in 1975 Wis. L. Rev. 742. After recognizing that an interest rate escalation clause may be

---

[3] Federal regulations require only that conventional mortgage loans made by federal savings and loan associations be repayable within thirty years. 12 CFR 545.6–1(a) (1977).

implemented by extending the loan term, the author observed that:

"This could be accomplished without violating contract terms either by including a clause that provided for extension of the maturity date or by originally making the final payment date later than it would be at the initial rate of increase [sic]. Most mortgages have a provision to the effect that 'this mortgage shall be paid in full within —————— years.' The blank could indicate, for example, 30 years, when calculation at the time of the contract would indicate amortization within 20 years." 1975 Wis. L. Rev. at 757, *fn.* 86.

Because First Federal failed to include such a provision, it cannot now extend the loan term without violating the provisions of the contract as it was written.

This conclusion rests principally on canons of construction. Such canons are designed to aid in the ascertainment of the intention of the parties, *North Gate Corp. v. National Food Stores, supra; Goldmann Trust v. Goldmann,* 26 Wis.2d 141, 131 N.W.2d 902 (1965), and they would necessarily yield to any contrary intention of the parties, if such an intention could be ascertained from the contract as a whole. *McCullough v. Brandt,* 34 Wis.2d 102, 106, 148 N.W.2d 718 (1967) ; *Estate of Schmitz,* 17 Wis.2d 412, 117 N.W.2d 249 (1962) ; *First Wisconsin Trust Co. v. Perkins, supra.*

The mortgage note does evince a clear intent that First Federal may impose a higher rate of interest and that the borrowers will have a corresponding duty to pay such interest, consistent with the remaining terms of the note. The accompanying mortgage, which is to be read together with the note, *Wipfli v. Bever,* 37 Wis.2d 324, 155 N.W.2d 71 (1967), expressly incorporates the terms and conditions of the note ". . . including duty to . . . pay higher interest on notice. . . ." That the plaintiffs signed the note and mortgage does not alone determine the extent of the duty or the conditions and circumstances under

which such increased interest may be collected, however. These questions can only be answered with reference to other provisions of the contract.

First Federal relies on the established rule that a contract is to be construed so as to give a reasonable meaning to each provision of the contract, and that courts must avoid a construction which renders portions of a contract meaningless, inexplicable or mere surplusage. *Farley v. Salow, supra; McCullough v. Brandt, supra; Goldmann Trust v. Goldmann, supra; North Gate Corp. v. National Food Stores, supra.* First Federal argues that the construction adopted by the trial court renders the interest adjustment clause unenforceable and therefore mere surplusage. A construction which had this result would not only conflict with the rule of construction cited by First Federal, but would also conflict with the manifest intention of the note and the mortgage.

However, it cannot be said that the decision of the trial court has this effect. The interest adjustment clause is not without effect. The interest adjustment clause permits a downward adjustment of the interest rate. If such an interest decrease is implemented, under the contract, First Federal would be able to impose and collect a subsequent interest increase within the twenty-five year term.

More fundamentally, the interest adjustment clause retains its full force with regard to any borrower who prepays his loan. Upon prepayment, the higher rate of interest may be used in calculating the then outstanding principal balance, and in this manner the interest increase may effectively be collected. The trial court observed that many, if not most, mortgages do not reach full term, but rather are paid before maturity.

The instant note specifically includes a "due-on sale" clause by which the full amount of the loan becomes due and payable, at the option of First Federal, whenever the

mortgaged premises are sold. *See: Mutual Fed. S. & L. Asso. v. Wisconsin Wire Wks.*, 58 Wis.2d 99, 205 N.W.2d 762 (1973). Any increased interest charges would thus be recoverable upon sale of the premises. Because there is a substantial likelihood that mortgaged residential property will be sold during the course of a twenty-five year loan term, it cannot be said that the interest adjustment clause is deprived of all effect, or is rendered mere surplusage.

The language in the particular note and real estate mortgage here under consideration precludes First Federal both from increasing the amount of the monthly payments and from extending the term of the loan.

First Federal further contends that this action was improperly commenced as a class action under sec. 260.12, Stats. (1973).[4]

In *Schlosser v. Allis-Chalmers Corp.*, 65 Wis.2d 153, 172, 222 N.W.2d 156 (1974), this court quoted Professor Chafee, *Some Problems of Equity*, 193, where it was said that:

" '[T]he court must determine whether the advantages of disposing of the entire controversy in one proceeding are outweighed by the difficulties of combining divergent issues and persons. It is a question of the balance of con-

[4] Sec. 260.12, Stats. (1973), provided in part:

". . . when the question is one of a common or general interest of many persons or when the parties are very numerous and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of the whole . . ."

This section has now been superseded by sec. 803.08, Stats., which provides:

"*803.08 Class actions.* When the question before the court is one of a common or general interest of many persons or when the parties are very numerous and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of the whole."

This section is "essentially identical" to the former statute. Judicial Council Committee Note, 1974.

venience whether the court will settle all the issues in one suit; or will settle only the common question in one suit and then allow the independent questions to proceed in separate equity suits; or not settle the controversy at all in a single unit.' "

The trial court determined that the second of these alternatives, that of settling the common question in a single suit and then allowing independent determination of the individualized questions, was appropriate in the instant case.

First Federal argues that this was error and that the persons included in the purported class do not have a community of interest as required by sec. 260.12, Stats. (1973). This statute requires that the named parties have a right or interest in common with the persons they represent. *Schlosser, supra,* at 169; *Mussallem v. Diner's Club, Inc.,* 69 Wis.2d 437, 445, 230 N.W.2d 717 (1975).

First Federal contends that this requirement is not met here because, of the 488 borrowers whose interest rates were increased by First Federal pursuant to contract language identical to that of the plaintiffs' note, some 119 borrowers have allegedly elected to increase the amount of their monthly payments. First Federal argues that these borrowers have thus accepted a new contract and also argues that, by their voluntary payments, these borrowers are estopped from challenging the payment increase. Therefore, it is argued, they lack a community of interest with the named plaintiffs, and the complaint does not plead the existence of a proper class.

The trial court stated that First Federal had not supported this contention with affidavits. A supplemental affidavit submitted by First Federal did state that 119 borrowers had elected to increase the amount of their payments, and First Federal argues that the trial court overlooked this affidavit. However, the record shows that this affidavit, while dated and acknowledged on Septem-

ber 30, 1975, was not filed with the court until April 23, 1976, the same day that the court's decision, dated February 20, 1976, was filed. Assuming, arguendo, that the affidavit was timely before the trial court, the question presented by First Federal does not prevent the case from proceeding as a class action.

The question of contract construction presented is identical for each of the 488 members of the alleged class. No unique questions of fact prevent determination of this common question in a single action. The members of the purported class therefore have an interest in common with the named plaintiffs.

First Federal correctly argues that a question remains as to the significance of any voluntary payment of increased monthly installments by 119 borrowers. *See: Security S. & L. Asso. v. Wauwatosa Colony, supra* (Mr. Justice ROBERT W. HANSEN, *concurring in part, dissenting in part)*, at 189. However, this question is not presently before us. Rather, the trial court's judgment was made applicable "to each individual ultimately determined to be a member of the plaintiff class," and the plaintiffs' brief states that by agreement of the parties, resolution of the new contract and estoppel issues has been delayed pending disposition of this appeal. First Federal argues that the trial court will be required to determine, on a case-by-case basis, whether these defenses are available against the 119 members of the purported subclass. Whether or not individual fact-finding should prove necessary to determine the position of the 119 borrowers, and regardless of the ultimate result of that determination, there remain 369 borrrowers who have satisfied all the requirements of a class action.

The fact that the position of the members of the purported subclass remains to be determined does not *ipso*

*facto* prevent the case from proceeding as a class action. It is not necessary that the position of each member of a class be identical; it is necessary only that there be " '. . . a community of interest among them in the questions of law and fact involved in the general controversy, or in the kind and form of relief demanded and obtained by or against each individual member of the numerous body . . .' " *Schlosser, supra,* at 171, *quoting* 1 Pomeroy, *Equity Jurisprudence* (5th ed.) pp. 598–600, sec. 269. This requirement is met here. It has also been said that the test of common interest to maintain a class action pursuant to sec. 260.12, Stats., is whether all the members of the purported class desire the same outcome of the suit that their alleged representatives desire. *Browne v. Milwaukee Bd. of School Directors,* 69 Wis.2d 169, 181, 182, 230 N.W.2d 704 (1975). There is no question that that test is met here.

In essence, the determination whether a case should proceed as a class action turns on the question whether the benefits to be derived from such a procedure outweigh the inherent difficulties. In other words, a court must determine whether the issues common to the named plaintiffs and the class members are outweighed by the issues particular to the individual class members. This determination rests in the sound discretion of the court. *Nolte v. Michels Pipeline Construction, Inc.,* 83 Wis.2d 171, 265 N.W.2d 482 (1978) ; *Lozoff v. Kaisershot,* 11 Wis.2d 485, 105 N.W.2d 783 (1960).

Thus in *Schlosser, supra,* this court permitted an action by 5,000 retired employees to proceed as a class action where questions of common interest regarding the employer's retirement insurance program were presented, despite the fact that the amount of damages suffered by each class member would have to be separately decided after determination of the common questions. This court said that a class action may be inappropriate where each

class member would have to appear and testify individually about a complex and disputed set of facts unique to him, but that such an action may be maintained where the questions particular to each class member are simple and require little individual participation.

*Schlosser, supra,* stands in contrast to *Nolte, supra.* There, this court approved a trial court determination that a class action was inappropriate, where the members of the purported class had not only sustained different amounts of injuries but also had suffered different types of injuries, and where not only the amount of damages but also questions of liability would have required individual determination. This court held that the substantial difficulties inherent in maintaining the case as a class action justified the trial court in holding a class action inappropriate.

No such individualized factual questions are presented here. Rather, this case resembles *Schlosser, supra,* in that resort to individual testimony, at least as to 369 members of the class, will probably not be necessary. It cannot be said, therefore, that any difficulties inherent in maintaining the case as a class action outweigh the benefits to be derived from consolidated treatment of the common legal questions. Therefore, the trial court did not abuse its discretion in permitting the case to proceed as a class action.

*By the Court.*—Judgment affirmed.

ABRAHAMSON, J., took no part.