In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 22-1143, 22-1170 & 22-1172

T.H.E. INSURANCE COMPANY,

*Plaintiff-Appellee,*

*v.*

TREY D. OLSON, as Special Administrator of the Estate of Timothy L. Olson, *et al.,*

*Defendants-Appellants.*

_____

Appeals from the United States District Court for the
Eastern District of Wisconsin.
No. 1:20-cv-01010 — **William C. Griesbach**, *Judge.*

_____

ARGUED SEPTEMBER 21, 2022 — DECIDED OCTOBER 17, 2022

_____

Before FLAUM, SCUDDER, and KIRSCH, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Before us is a question of insurance coverage under Wisconsin law arising out of injuries to two volunteers at Fourth of July fireworks displays in Land O' Lakes and Rib Lake, Wisconsin. The district court found that the plaintiff, T.H.E. Insurance, had no duty to defend or indemnify its insured, the fireworks distributor, for both events. We affirm.

**I**

A

We resolve these coverage issues under Wisconsin law. Like many states, Wisconsin distinguishes between a duty to defend and a duty to indemnify. The state's Supreme Court has explained that an insurer's duty to defend "is broader than its duty to indemnify." *Olson v. Farrar*, 809 N.W.2d 1, 7 (Wis. 2012); see also *Choinsky v. Emps. Ins. Co. of Wausau*, 938 N.W.2d 548, 555 (Wis. 2020). "The insurer is under an obligation to defend only if it could be held bound to indemnify the insured, assuming that the injured person proved the allegations of the complaint, regardless of the actual outcome of the case." *Olson*, 809 N.W.2d at 7 (quoting *Grieb v. Citizens Cas. Co. of New York*, 148 N.W.2d 103, 106 (Wis. 1967)). Absent a duty to defend, the insurer shoulders no duty to indemnify on the alleged facts giving rise to the underlying injury or harm. See *Choinsky*, 938 N.W.2d at 555 ("In contrast, if the complaint does not allege a covered claim, the insurer has no obligations under the policy.").

Wisconsin law also provides substantial guidance on interpreting insurance policies. "An insurance policy is construed to give effect to the intent of the parties as expressed in the language of the policy." *Folkman v. Quamme*, 665 N.W.2d 857, 864 (Wis. 2003). Words are given the plain and ordinary meaning as a reasonable insured would understand them. See *id.* at 864–65. Ambiguous language is interpreted in the insured's favor. See *id.* at 865. Policy language is ambiguous only if it is "susceptible [by a reasonable insured] to more than one reasonable interpretation." *Id.* at 864–65 (quoting *Danbeck v. Am. Fam. Mut. Ins. Co.*, 629 N.W.2d 150, 193 (Wis. 2001)).

B

Timothy Olson and Todd Zdroik sustained injuries while volunteering at Fourth of July fireworks displays in the towns of Rib Lake and Land O' Lakes in 2018. Fireworks distributed by Spielbauer Fireworks Company exploded prematurely at both events, severely burning Zdroik and Olson. Olson later passed away from unrelated causes. Both towns used teams of volunteers to put on their Fourth of July displays. Olson opened and closed a bin from which other volunteers retrieved fireworks during the show in Rib Lake. Zdroik worked at the Land O'Lakes event as a so-called "shooter," manually lighting the fuses on mortar shells.

Olson's estate and Zdroik sued Spielbauer in Wisconsin state courts. From the outset, it was clear the parties disagreed with Spielbauer's insurer, T.H.E. Insurance, about whether the claims for Olson and Zdroik's injuries would be covered under Spielbauer's general and excess liability policies.

C

As the state court litigation progressed, T.H.E. sought to resolve the coverage issue in federal court under the Declaratory Judgment Act. See 28 U.S.C. § 2201(a). The district court granted T.H.E.'s motions for judgment on the pleadings after examining the insurance policy and the personal injury allegations in Olson and Zdroik's state court complaints. The district court determined T.H.E. had no duty to defend—and by extension, no duty to indemnify—Spielbauer because the policy in question excluded coverage for injuries sustained by volunteers at fireworks displays. In their respective state court complaints, Zdroik and Olson admitted to volunteering at the displays. Although Olson's role as a container operator

was minimal, the district court concluded that the exclusion in T.H.E.'s policy applied to any kind of volunteer work. Zdroik, Olson's estate, and Spielbauer all appealed.

## II

Our analysis of Spielbauer's general and excess liability insurance policies turns on the "Shooters Endorsement," a one-sentence exclusion that reads:

> This policy shall NOT provide coverage of any kind (including but not limited to judgment costs, defense, costs of defense, etc.) for any claims arising out of injuries or death to shooters or their assistants hired to perform fireworks displays or any other persons assisting or aiding in the display of fireworks whether or not any of the foregoing are employed by the Named Insured, any shooter or any assistant.

The key issue is whether the exclusion extends to any and all volunteers or only to those assisting hired shooters or hired assistants.

Both parties focus on the middle of the block quote, offering competing interpretations of the words "any other persons assisting or aiding in the display of fireworks." They dispute how this group relates back to the phrase about "shooters and their assistants *hired* to perform…." Zdroik, the estate, and Spielbauer urge us to conclude that while "any other persons" may include volunteers, the exclusion applies to volunteers only if they were assisting hired shooters or hired assistants at the time they sustained their alleged injuries. At a more practical and concrete level, that would mean the exclusion does not apply to the estate and Zdroik's claims because

there were *no* hired persons at either Fourth of July fireworks event. For its part, T.H.E. insists that the "other persons" category is broader and includes any volunteer assistant regardless of whether anyone else at the display worked as a hired employee or contractor.

## A

T.H.E. has the better reading. The Shooters Endorsement plainly and unambiguously creates two distinct groups excluded from coverage. Go back to the block quote and focus on who the language excludes. On one side are hired shooters and their hired assistants. On the other is a large residual category of "any other persons" who assist the fireworks display, regardless of whether they assist hired persons. This reading is compelled partly by the last-antecedent rule, which takes the qualifying phrase "hired to perform fireworks displays" and attaches it to the last antecedent only—shooters and assistants. See *In re Airadigm Commc'ns, Inc.*, 616 F.3d 642, 655 (7th Cir. 2010). The word "or," following the phrase "hired to perform other fireworks displays," introduces a separate, discrete group of other persons who assist the display. That group, consisting of "any other persons assisting or aiding in the display," stands alone.

A reasonable insured would interpret the policy the same way. The expansive wording in and around the final category ("any other persons," "assisting or aiding," "whether or not any of the foregoing are employed by the Named Insured, any shooter, or any assistant") puts a reasonable insured on notice that all volunteers are excluded from coverage.

Olson's estate, Zdroik, and Spielbauer beg to differ, urging us to interpret the policy against the backdrop of the

Wisconsin workers' compensation scheme. They view the Shooters Endorsement exclusion as limiting coverage for hired personnel who are already entitled to workers' compensation, contending that a reasonable insured would believe the exclusion only applies if there are hired workers at the display. We are not persuaded.

Whether we accept T.H.E.'s reading or the defendants', the provision plainly excludes coverage for at least *some* volunteers who presumably are ineligible for workers' compensation. More fundamentally, a reasonable insured would understand that the provision's purpose is to exclude coverage for high-risk work, not to account for alternative remedies for persons who may have been injured at a fireworks display. This purpose explains why the provision sweeps up "*any* other persons" involved in the risky work of putting on a fireworks display, and why hired shooters and assistants—including all volunteers—are excluded irrespective of who employs them or asked them to help.

No doubt the exclusion includes some surplus language. See *Goebel v. First Fed. Sav. & Loan Ass'n of Racine*, 266 N.W.2d 352, 358 (Wis. 1978) ("[C]ourts must avoid a construction which renders portions of a contract meaningless, inexplicable or mere surplusage."). Doubtless, too, T.H.E. could have achieved the exact same result by scratching the words "shooters or their assistants hired to perform," since these individuals are already captured by the "other persons" category. The placement of the phrase "whether or not any of the foregoing are employed by the Named Insured, any shooter or any assistant" at the end of the sentence is odd as well. The words "*any* of the foregoing" suggest this phrase should modify shooters, assistants, and other persons, even though only

the shooters and assistants are required to have any employment relationship at all.

But T.H.E.'s point does not become twisted or uncertain just because the company used extra words in the exclusion to make it. The surplusage canon informs how to choose between multiple reasonable interpretations. It does not require injecting ambiguity into a wordy provision that is otherwise clear. See *id.* at 679 ("[The canons of construction] necessarily yield to any contrary intention of the parties, if such an intention could be ascertained from the contract as a whole."); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 176 (2012) (explaining that the surplusage canon only applies if the provision is susceptible of more than one meaning). The exclusion here is at once bulky and plain: the provision excludes anyone who assists a fireworks display. If anything, the extra words underscore the breadth of the exclusion by punctuating just how many people the policy intended to exclude—any hired shooter or any hired assistant no matter who hired them, and any leftover assistant who was not hired but pitched in anyway.

Zdroik, Olson's estate, and Spielbauer also see our reading as in tension with the provision's use of punctuation and prepositions. To their eyes, the absence of commas—running from the description of hired shooters through other persons assisting in the display—means that the whole sentence forms one continuous phrase. The clause describing "other persons" therefore modifies the phrase "hired to perform the fireworks display." The result, they say, is that other persons assisting the display are excluded only if they are assisting the same display where hired shooters and hired assistants are working.

But this is backwards. The defendants are essentially reversing the last-antecedent rule by turning "other persons" into a qualifying phrase and "hired to perform" into its antecedent. Indeed, the clause about other persons is not a qualifying phrase at all: it stands separately from the hired assistants and shooters, commas or no.

Finally, the defendants return us to the middle portion of the block quote that explains that the shooters and assistants must be "hired to perform fireworks displays" while the "other persons" must be "assisting or aiding in *the* display of fireworks." The defendants invite us to read a great deal of meaning into the word "the." They take this word to mean that other persons assisting the display must be assisting the *same* display that hired shooters and assistants worked at. We see things differently. At best, the phrase "the fireworks display" indicates that anyone assisting (hired shooters, hired assistants, or otherwise) must be assisting in the same fireworks display that gave rise to the insurance claim.

B

Under this plain reading of the provision, T.H.E. had no obligations to Spielbauer for Zdroik's or Olson's estate's claims. The district court stood on firm ground in reviewing documents incorporated by reference in T.H.E.'s motions, including both the estate's and Zdroik's state court complaints, when it reached this conclusion. See *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991) (per curiam). The (undisputed) admissions in those complaints allowed the district court to determine there was no duty to defend, and therefore no duty to indemnify. See *Liebovich v. Minnesota Ins. Co.*, 751 N.W.2d 764, 765–66 (Wis. 2008) (observing that the duty to defend is determined by the allegations in the underlying complaint).

Start with Zdroik. He admitted in his state court complaint that he was a volunteer shooter, a major role in a fireworks display in Land O'Lakes. Zdroik's contribution is clearly embraced by the final category of other persons assisting the display, even if he could not be excluded under the first category of hired shooters.

Likewise, the estate admitted in its complaint that Timothy Olson operated a bin of fireworks to assist other volunteers at the Rib Lake event. Olson played a minimal role, but no one disputes what he was doing. And the Shooters Endorsement excludes coverage for all volunteers, even if they made only small contributions.

### III

Spielbauer urges us to resist reaching the indemnity question. It argues that the indemnity issue was not ripe for decision without a judgment on liability. But neither the law nor the facts are on Spielbauer's side.

First, Wisconsin law allows us to reach T.H.E.'s indemnification obligations because the duty to defend is broader than the duty to indemnify. See *Olson*, 809 N.W.2d at 7. Spielbauer does not argue that the district court's decision on the duty to defend was unripe. And where the district court has found there is no duty to defend, the immediate legal consequence is that there is also no duty to indemnify. See *Choinsky*, 938 N.W.2d at 555. This consequence is a product of Wisconsin's substantive law, which we are bound to apply in a diversity case like this one. See *Mayer v. Gary Partners & Co.*, 29 F.3d 330, 333 (7th Cir. 1994).

Second, the facts before the district court do not support Spielbauer's position either. Ripeness doctrine is meant to

"prevent the courts, through avoidance of premature adjudi-
cation, from entangling themselves in abstract disagree-
ments." *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148 (1967).
Whether an issue is ripe depends on the "fitness of the issues
for judicial decision and the hardship to the parties of with-
holding court consideration." *Id.* at 149. An issue is more
likely to be fit for judicial review if it is purely legal rather
than factual. See *id.*

In the insurance context, we have generally observed that
"decisions about indemnity should be postponed until the
underlying liability has been established." *Lear Corp. v. John-
son Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003). That
preference reflects our concerns about wading into an abstract
dispute. See *id.* But the rule is not absolute. We have gone the
other way where indemnification issues did not hinge on re-
mote contingencies and facts. See *Amling v. Harrow Indus.
LLC*, 943 F.3d 373, 378–79 (7th Cir. 2019) (concluding that
"[t]here is nothing remote about a plaintiff's asking which of
two defendants she is currently suing is the right one to sue"
under the terms of an executed asset-purchase agreement);
*Bankers Tr. Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 680–81
(7th Cir. 1992) (finding an indemnification suit ripe where the
plaintiff raised a legal issue by challenging the validity of a
settlement agreement between the insured and insurer that
limited the insurer's indemnification obligations).

But the dispute here was neither abstract nor remote.
Zdroik and Olson's estate both sued Spielbauer and admitted
immediately to volunteer roles. If either party recovered any-
thing from Spielbauer, the state court would need to turn to
T.H.E.'s duty to indemnify generally and the application of
the Shooters Endorsement specifically. The federal district

court could settle that issue based on the parties' admissions and the text of the Shooters Endorsement. Because there was no dispute that Zdroik and Olson were volunteers, the district court's conclusions hinged on policy interpretation—a legal rather than factual issue. And at oral argument, the defendants could not identify which evolving or unknown facts would change the district court's decision. There was no suggestion, for instance, that the underlying liability trials might reveal that Olson and Zdroik were bystanders or spectators, not volunteers. Spielbauer's coverage was therefore ripe for review.

For these reasons, we AFFIRM.