COURT OF APPEALS
DECISION
DATED AND FILED

February 24, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1990**

Cir. Ct. No. **2019CV1044**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT IV**

OAKWOOD JT KLEIN, LLC,

PLAINTIFF-APPELLANT-CROSS-RESPONDENT,

V.

OAKWOOD ACQUISITION, LLC,

DEFENDANT-RESPONDENT-CROSS-APPELLANT.

APPEAL and CROSS-APPEAL from an order of the circuit court for Dane County: RHONDA L. LANFORD, Judge. *Affirmed in part; reversed in part and cause remanded for further proceedings*.

Before Blanchard, P.J., Kloppenburg, and Nashold, JJ.

¶1 BLANCHARD, P.J. This is a dispute over the enforceability of a contract for the sale of six acres of land by Oakwood Acquisition, LLC (Acquisition) to Oakwood JT Klein, LLC (JT Klein). The contract, an "offer to

purchase," contemplates construction of affordable senior housing, to be financed with the assistance of income tax allocations under a low-income housing, tax-credit program that was administered by a state agency. After a board member for the parent entity of potential seller Acquisition purported to "cancel" the deal, JT Klein filed this action for breach and anticipatory breach of contract, seeking damages or specific performance in the form of completion of the planned sale.

¶2 The circuit court granted Acquisition's motion for summary judgment dismissing JT Klein's claims. The court based this decision on the following undisputed facts: a contingency in the offer to purchase regarding potential tax credits was not met, this contingency is for the benefit of both parties, and therefore the contract is unenforceable unless both parties waive the failure to meet the contingency, which Acquisition has not done. JT Klein contends that the court erred because the undisputed facts show that the tax-credit contingency has been met. In the alternative, JT Klein argues that, even if the undisputed facts show that the contingency has not been met, the contract unambiguously grants to JT Klein the unilateral right to waive the contingency, which JT Klein exercised. The parties also disagree about whether we should affirm the court's summary judgment ruling based on Acquisition's argument that the evidence is undisputed that it has an ownership interest in JT Klein and, based on that interest, JT Klein could not waive the contingency unless Acquisition authorizes a waiver.

¶3 Applying a plain language interpretation of the contract to undisputed facts, we conclude that Acquisition is correct that the contract contingency has not been met, thus requiring waiver of the contingency to prevent the contract from being unenforceable. However, we separately conclude that JT Klein correctly interprets the contract to give JT Klein the unilateral right to waive the contingency and that JT Klein has done so. Further, we reject Acquisition's

argument based on its alleged ownership interest in JT Klein. Accordingly, we reverse the circuit court's grant of summary judgment dismissing JT Klein's claims against Acquisition based on the tax-credit contingency in the offer to purchase and remand for further proceedings.

¶4 Acquisition cross-appeals the circuit court's denial of its motion for sanctions against JT Klein and its counsel under WIS. STAT. § 895.044 (2019-20).[1] Acquisition argues that the court erred in rejecting the following alternative grounds for imposing sanctions: JT Klein allegedly brought this action in bad faith, for the sole purpose of harassing Acquisition; or, JT Klein or its counsel knew or should have known that the action lacked a reasonable basis in law or equity. We conclude that Acquisition's arguments are undeveloped and accordingly affirm the circuit court on this issue.

## BACKGROUND

¶5 Acquisition's parent entity is Oakwood Lutheran Senior Ministries (Ministries), which owns a retirement community in Madison. Adjoining the retirement community is a parcel of approximately six acres of vacant land owned by Acquisition that would be the site of the planned senior housing development project at issue here. Agents for Ministries began meeting in 2018 with real estate developer JT Klein Company, Inc. (Klein Co.) about plans to use Acquisition's vacant land for the proposed project. As part of those plans, Klein Co. ended up incorporating the entity Oakwood JT Klein, LLC, a party to this action, which we have been referring to as "JT Klein." These discussions involved communications

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

between Jacob Klein, the owner of Klein Co. and eventual registered agent for JT Klein, and Rick Bova, then the chief executive officer of Ministries.

¶6 On June 19, 2018, Jacob Klein gave Bova three proposed transaction documents:

(1) The main contract at issue in this appeal, the enforceability of which is the focus of the parties' arguments: an "offer to purchase." This sets forth JT Klein's offer to purchase Acquisition's land. It lists JT Klein as the land buyer and Acquisition as the seller.

(2) What the parties refer to as a "letter of intent." This is a letter from Jacob Klein on behalf of Klein Co. to an executive of an Acquisition-affiliated entity seeking confirmation as to anticipated obligations to be undertaken by each side.

(3) What the parties refer to as a "land-loan agreement." This describes Acquisition as proposing to make a "Land Loan" to JT Klein to "help finance" the project. It lists JT Klein as the borrower and describes Acquisition as committing to "contribute land" in a way that would be "collateralized in the form of a Loan to the Project."

¶7 On June 28, 2018, Jacob Klein signed the offer to purchase and land-loan agreement on behalf of JT Klein. Bova signed these same documents on behalf of Acquisition, with Klein receiving Bova's signature pages on June 29, 2018. However, neither party signed the letter of intent.

¶8 The offer to purchase contains two sets of references that address the same general topic of the contingency at issue in this appeal, although using different language. The contingency is that the offer to purchase is enforceable only if financing for the project is supported by the allocation of income tax credits under a low-income housing tax-credit program. These allocations would come from the Wisconsin Housing and Economic Development Authority (WHEDA). Explaining briefly (and as discussed in more detail below), the offer

4

to purchase consists of two parts: a form document and a non-form addendum. The form portion states in part that the offer is "contingent on the project receiving tax credit reservation from WHEDA in [WHEDA's] next allocation of credits." We call this "the next allocation provision." The addendum contains different provisions relating to the tax-credit contingency.

¶9 June 29, 2018, the day Klein received the signed offer to purchase and land-loan agreement, was the deadline set by WHEDA for the submission of applications for its next allocation of credits. Klein Co. submitted an application on June 29 for tax credits for the project. Klein Co.'s application identified JT Klein as a "to be formed" entity that would own the project and that would be affiliated with Acquisition.

¶10 On June 30, 2018, Jacob Klein filed the articles of incorporation for JT Klein. Jacob Klein also prepared an operating agreement, dated June 30. Based on the operating agreement, the newly formed JT Klein was held solely by Klein Co.[2]

---

[2] We assume without deciding that JT Klein—the party to this action and the LLC formed by developer Klein Co. soon after the execution of the offer to purchase, with Klein Co. as its sole owner—is the "Oakwood JT Klein" entity listed as "the buyer" in the offer to purchase. Following this assumption, our analysis of the parties' arguments at times determines the extent to which actions taken by what might be referred to as "JT Klein the party and LLC" are consistent with the rights of "the buyer" under the offer to purchase. *See, e.g.*, *infra* note 10. We make these assumptions to simplify our discussion, but we do not intend to resolve in either direction that issue of corporate identity. That is, we express no view regarding any argument that might be advanced by the parties on remand regarding this assumption or any directly related topic, such as whether it was proper for Klein Co. to create a solely owned LLC purporting to act as the buyer. *See infra* note 4. Acquisition at times in its briefing on appeal may mean to suggest that "JT Klein the party and LLC" should not be considered "the buyer" identified in the offer to purchase, as for example when it notes that the identity of "the buyer" was disputed by the parties in the circuit court. However, as addressed in the Discussion section below, the closest that Acquisition comes to raising such a point on appeal is to make the following argument: the only evidence in the summary judgment materials is that Acquisition has an interest in "Oakwood JT Klein." And, as we discuss below, we reject this ownership-of-JT-Klein argument.

¶11 In August 2018, while the result of the tax-credit application was still pending, a board member for Ministries informed Jacob Klein that the board had decided to "cancel" the project and took the position that Klein Co. should not "invest any[ ]more resources in it."

¶12 Later in August, WHEDA denied the June application for tax credits submitted by Klein Co. Despite the purported cancellation of the project by the Ministries board member, at some point prior to a January 2019 deadline for another round of allocations, Klein Co. submitted to WHEDA a second application for tax credits for the project. In January 2019, WHEDA granted the requested tax-credit allocations.

¶13 Acquisition and JT Klein engaged in communications through the fall of 2018 and into 2019 about the enforceability of the three transaction documents described above. Pertinent here, Jacob Klein, acting on behalf of JT Klein and through legal counsel, notified Acquisition of the following by letter dated February 1, 2019: JT Klein was waiving all "diligence contingencies" in the offer to purchase and that JT Klein was ready, willing, and able to complete performance on the terms of the offer to purchase. Acquisition responded that it was not bound by the offer to purchase, in part because, according to Acquisition, Bova lacked actual or apparent authority to bind Acquisition through his signature on the offer to purchase.

¶14 JT Klein commenced this lawsuit against Acquisition, alleging a breach of contract and anticipatory breach of contract, and seeking a declaratory judgment that the offer to purchase was enforceable. Both parties brought motions for summary judgment. Acquisition also moved for sanctions under WIS. STAT. § 895.044.

¶15    In their respective motions for summary judgment, the parties disputed whether JT Klein could unilaterally waive the signed offer's contingency that tax credits had to be timely allocated.  Acquisition took the further position that there were issues of fact regarding Bova's actual or apparent authority to bind Acquisition to the offer to purchase, precluding summary judgment in JT Klein's favor.[3]

¶16    The circuit court granted Acquisition's motion for summary judgment and denied JT Klein's motion.  The court assumed that the next allocation provision in the offer to purchase was an unmet contingency and determined that the contingency was intended to benefit both parties.  Therefore, the court concluded, JT Klein could not unilaterally waive the provision to prevent the offer to purchase from becoming unenforceable—that is, both parties, as beneficiaries, needed to waive the provision, and it was undisputed that Acquisition did not do so.  The court did not address the issue of Bova's actual or apparent authority to bind Acquisition to the offer to purchase.

¶17    JT Klein moved for reconsideration.  It argued in part, and for the first time, that the tax-credit contingency *had* been met because Klein Co. had eventually obtained tax credits, in WHEDA's January 2019 allocation (in contrast to the August 2018 allocation).  The circuit court denied both JT Klein's motion for reconsideration and Acquisition's motion for sanctions.

---

[3] Acquisition also made an argument in the circuit court related to a deadline stated in the offer to purchase by which Acquisition had to accept the offer to purchase.  Acquisition argued that there were genuine issues of material fact as to whether both parties had, through their conduct, implicitly waived objection to Acquisition's failure to accept the offer by the deadline.  However, we do not discern Acquisition to make any argument on appeal that relates to this topic and therefore we deem it abandoned for purposes of this appeal.

¶18  JT Klein appeals the circuit court's grant of Acquisition's motion for summary judgment dismissing JT Klein's claims.[4]  Acquisition cross-appeals the court's denial of its motion for sanctions, which we address further below.

## DISCUSSION

### I. Summary Judgment

¶19  We review the circuit court's decision to grant summary judgment de novo.  *See **Raasch v. City of Milwaukee***, 2008 WI App 54, ¶6, 310 Wis. 2d 230, 750 N.W.2d 492.  "Summary judgment must be granted when there is no genuine issue of material fact and a party is entitled to judgment as a matter of law."  ***Id.*** (citing WIS. STAT. § 802.08(2)).  We also interpret contracts de novo.  *See **id.***

¶20  We begin by providing additional standards regarding contract interpretation.  We then address a threshold issue regarding the next allocation provision.  The threshold issue is whether, for purposes of summary judgment, the provision established the need for a waiver to allow the offer to remain enforceable even though the contingency was not met.  As explained below, applying a plain meaning interpretation to the terms of the offer to purchase in the

---

[4] JT Klein appears to further argue that it is entitled to summary judgment based on its exercise of its unilateral right to waive the contingency.  But it fails to provide support for this argument.  In particular, JT Klein does not address evidence that Acquisition presented in the circuit court that Acquisition argues could support a reasonable inference that, regardless of the contingency waiver issue, the offer to purchase is unenforceable because Bova, the person who signed the offer to purchase, lacked apparent or actual authority to bind Acquisition to the offer to purchase.  In this appeal we resolve only JT Klein's narrow argument that it was not appropriate to grant Acquisition's motion for summary judgment dismissing JT Klein's claims based specifically on the tax-credit contingency in the offer to purchase.  We leave for proceedings following remand the resolution of all other issues, apart from the sanctions issue raised by Acquisition in its cross-appeal, which we separately resolve below.

context of the undisputed evidence, we conclude that the tax credits were not awarded to the project in the "next allocation" of tax credits by WHEDA and thus waiver was required. Having reached that conclusion, we turn to the issue of whether JT Klein could unilaterally waive the contingency. We explain below why we conclude, based on our interpretation of the offer to purchase as a whole, that JT Klein could unilaterally waive the tax-credit contingency, and also conclude that it is undisputed that JT Klein did waive the contingency.

*Legal Standards*

¶21    Our supreme court has provided the following pertinent standards for contract interpretation:

> [O]ur goal "is to ascertain the true intentions of the parties as expressed by the contractual language." Stated another way, the best indication of the parties' intent is the language of the contract itself, for that is the language the parties "saw fit to use[.]" We construe the contract language according to its plain or ordinary meaning. "If the contract is unambiguous, our attempt to determine the parties' intent ends with the four corners of the contract, without consideration of extrinsic evidence." Only when the contract is ambiguous, meaning it is susceptible to more than one reasonable interpretation, may the court look beyond the face of the contract and consider extrinsic evidence to resolve the parties' intent.

*Town Bank v. City Real Est. Dev., LLC*, 2010 WI 134, ¶33, 330 Wis. 2d 340, 793 N.W.2d 476 (citations omitted).

*Whether Tax Credits Were Obtained In "Next Allocation"*

¶22    JT Klein argues that the circuit court improperly granted Acquisition's motion for summary judgment on the ground that the terms of the next allocation provision in the offer to purchase have not been met. JT Klein's

argument is that there is at least one reasonable interpretation of the offer to purchase under which the provision is satisfied: the "next allocation of credits" language in the offer to purchase refers to WHEDA's allocation of credits in January 2019, and there is no dispute that JT Klein submitted a successful application resulting in the January 2019 allocation. According to JT Klein, the August 2018 allocation, for which the project received no credits, can only be reasonably understood to be the "current" allocation, not the "next" allocation.[5] Acquisition responds that, under a plain language interpretation of the offer to purchase, "next" could reasonably refer only to the August 2018 allocation. We agree with Acquisition's contract interpretation. We begin by addressing the meanings of "next" and "allocation" under a plain language interpretation of the strict terms of the offer to purchase. Then we separately turn to extrinsic evidence submitted on summary judgment to determine whether tax credits were in fact obtained in the next allocation.

¶23 To repeat, the pertinent language is that the offer to purchase is "contingent on the project receiving tax credit reservation from WHEDA in its next allocation of credits." JT Klein does not dispute Acquisition's argument that the plain meaning of "next" as pertinent here, is "nearest in time or immediately following." *See Next*, AMERICAN HERITAGE DICTIONARY (5th ed. 2020). Nor does JT Klein seriously dispute that this meaning should be applied based on the perspective of the contracting parties when they executed the offer in June 2018. Thus, the offer to purchase is in pertinent part contingent on two events: that

---

[5] Acquisition argues that JT Klein forfeited this argument that the tax-credit contingency was met because JT Klein failed to raise it in the circuit court until it moved for reconsideration. We assume without deciding that JT Klein preserved this argument in the circuit court and reject the argument for the reasons stated in the text.

WHEDA reserved tax credits for the development project associated with the land being sold and that it specifically did so in the allocation occurring immediately following the parties' execution of the offer to purchase.

¶24 We turn to the extrinsic evidence presented on summary judgment to determine whether this aspect of the contingency, when interpreted as we have just explained, was met. *See* ***Marshall & Ilsley Bank v. Milwaukee Gear Co.***, 62 Wis. 2d 768, 776, 216 N.W.2d 1 (1974) (evidence from outside the contract admissible when "'not directed toward the contents of the agreement, but to establish a condition precedent, the happening of which was necessary before it became a binding contract'" (quoted source omitted)). Extrinsic evidence in the summary judgment materials in this case reveals the following undisputed facts regarding the shared understanding of the contracting parties about how WHEDA allocated tax credits. WHEDA would: (1) set a specific deadline date for the submission of tax-credit applications by developers for whatever development projects they would like to be allocated credits during that cycle; (2) review all applications submitted by the deadline, using criteria not at issue in this appeal; and (3) within a few months after the application deadline, report which projects were allocated tax credits.

¶25 We now recap the pertinent, undisputed facts. Klein Co. submitted two applications to WHEDA on behalf of JT Klein. The first was submitted on the day of the application deadline, June 29, 2018, the same day Jacob Klein received Bova's signature on the offer to purchase. This application was accepted by WHEDA, but it met with failure: no tax credits for the project were allocated by WHEDA in August 2018. Klein Co. submitted another application, this time before the next deadline in January 2019, which met with success: the project was allocated credits later that month.

¶26    Applying the unambiguous meaning of "next allocation" to this evidence, the allocation of tax credits "nearest in time" to June 2018 was WHEDA's August 2018 allocation, in which the project was not allocated credits, and therefore the contingency was unmet.

¶27    JT Klein does not dispute any of the above points underlying our interpretation of "next allocation" and the contingency having been unmet based on the failure of the application for the August 2018 allocation. Instead, JT Klein effectively asks us to rely on certain extrinsic evidence regarding the meaning of the contractual term "next allocation." Specifically, JT Klein points to the subjective interpretations of Jacob Klein and Bova that the January 2019 allocation was the "next allocation" and the August 2018 allocation was the "current allocation."[6]    However, as noted above, we consider extrinsic evidence regarding the meaning of contractual terms "[o]nly when the contract is ambiguous," and here the meaning of "next" in the phrase "next allocation of credits" is unambiguous. *See **Town Bank***, 330 Wis. 2d 340, ¶33.

--------

[6] Because we rely on our plain meaning interpretation of the offer to purchase, as explained in the text, we have no basis to consider the testimony by Klein and Bova on the meaning of the contractual term "next allocation." However, for context we now briefly summarize their testimony interpreting the contract language and explain why we conclude that their shared interpretation cannot be squared with the contract language actually used in light of the undisputed facts. Both effectively purported to interpret "allocation" as addressing not only WHEDA's awarding of credits (*e.g.*, the awarding of one batch of credits in August 2018 and then awarding another batch of credits in January 2019) but also to all elements of the overall process in which WHEDA received and reviewed applications for credits, a process that had already begun on the day that the offer to purchase was executed and that would continue through WHEDA's review of all applications submitted on or before that day. Under this interpretation, the first application here, filed on the June 29, 2018 deadline, was part of an allocation process that was already underway, with the "next allocation" (meaning, the entire process) beginning sometime after that point, when WHEDA began accepting applications for the January 2019 allocation. This view is directly at odds with the specific, unambiguous contract language, which is tied only to the "next *allocation*," not to the not yet begun process or cycle of *applications* for later-in-time allocations.

*Unilateral Waiver of Contingency*

¶28    We turn now to the waiver issue, which involves a dispute over whether JT Klein alone could waive the tax-credit contingency or whether both parties needed to waive it.  JT Klein argues that, even if the undisputed facts triggered the contingency under a proper interpretation of pertinent terms in the offer to purchase and therefore a waiver is required, summary judgment is inappropriate because the addendum to the offer to purchase unambiguously gives JT Klein the right to unilaterally waive the contingency.[7]

¶29    Acquisition argues that the next allocation provision in the form portion of the offer to purchase unambiguously creates, separately from the terms of the addendum to the form, a tax-credit contingency as a benefit to both sides of the related transactions.  For this reason, Acquisition contends, waivers by both parties are necessary under the terms of the offer to purchase based on a canon of contract interpretation.  As discussed in more detail below, the canon is that a contingency in a contract may not be waived to the disadvantage of a party for whom the contingency was created to provide a benefit.  *See Goebel v. First Fed. Sav. & Loan Ass'n of Racine*, 83 Wis. 2d 668, 677, 266 N.W.2d 352 (1978) (a party may not waive a provision of a contract when "the waiver would deprive the non-waiving party of a benefit under the provision in question").  Alternatively, Acquisition makes an argument based on extrinsic evidence.  It argues that

---

[7] We reject Acquisition's assertion that JT Klein forfeited its arguments that it could unilaterally waive the tax-credit contingency by failing to make those arguments in the circuit court.  Acquisition fails to persuade us that JT Klein did not preserve its arguments by arguing in the circuit court that there was no basis to consider extrinsic evidence and that, under the terms of the offer, JT Klein had a unilateral right to waive the contingency.  In addition, Acquisition fails to show how it was deprived of the ability to provide additional evidence in the circuit court to attempt to rebut any allegedly forfeited argument.

extrinsic evidence establishes beyond a genuine dispute that the next allocation provision was included to benefit both parties (again, separate from the addendum) and therefore it cannot be unilaterally waived by JT Klein. Acquisition's arguments appear to be either that the addendum contains a separate unilateral right to waive a contingency different from that contained in the next allocation provision, or that the addendum "merely confirms that … JT Klein could cancel" the signed offer if tax credits were not approved for the project.

¶30 As we explain, we conclude that the only reasonable interpretation of the offer to purchase is that the next allocation provision in the form portion of the offer must be construed as part and parcel of the more detailed and unambiguous provisions in the addendum—together all these provisions form a single definition of the tax-credit contingency. That is, the offer to purchase is unambiguous on this topic when properly construed as a complete document, which is how the offer to purchase on its face directs the reader to construe it. Accordingly, we conclude that summary judgment on the ground that JT Klein could not unilaterally waive the failure to obtain tax credits is inappropriate. Before explaining this conclusion further, we summarize the pertinent provisions in the offer to purchase. Further below, we address Acquisition's arguments that the next allocation provision requires waiver by both parties.

¶31 The offer to purchase consists of a filled-in offer to purchase land form and an addendum that was incorporated by reference as "Addendum A." As

noted above, the form lists JT Klein as "the buyer" and Acquisition as "the seller."[8]

¶32 Two sections of the offer to purchase address the agreement being contingent on a WHEDA tax-credit allocation: three lines of the form portion of the offer, consisting of a section entitled "additional provisions/contingencies"; and a group of provisions within a section of the non-form addendum entitled "buyer's contingencies."

¶33 What we have been calling the next allocation provision consists of the following three lines in the form, with emphasis added:

> *See Addendum A*. This Offer will terminate and be of no further force and effect if Buyer's financing is not obtained and construction has not commenced on or before December 15, 2019. *This Offer is also contingent on the project receiving tax credit reservation from WHEDA in its next allocation of credits*.

¶34 The "buyer's contingencies" section of the addendum contains a provision entitled "final contingencies." Among the final contingencies is a "tax credits" contingency. The "tax credits" contingency provides in full:

> Tax credits. Buyer may cancel this agreement in the event buyer is unsuccessful in earning an award of low income housing tax credits from [WHEDA]. Seller and buyer agree that buyer will determine, at buyer's sole discretion, which type of tax credits to apply for based on buyer's intended use.

---

[8] To avoid unnecessary distraction to the reader, we omit some formatting used in the offer to purchase that has no bearing on our analysis. This mostly involves the omission of capitalization that appears in the original.

The introductory paragraph of the "final contingencies" states that "the buyer may terminate this agreement unilaterally" "[i]f any of the final contingencies," including the tax-credit contingency, "have not been satisfied on or before" September 1, 2019. Another addendum provision establishes that each of the final contingencies are "for the buyer's benefit." This provision further explains that the "buyer, in its sole discretion may waive this [*i.e.*, may waive any unmet, 'final'] contingency by written notice of waiver to seller" and again states that the buyer may also terminate the signed offer.

¶35    Considering the pertinent addendum provisions together, they unambiguously give JT Klein a unilateral right to choose whether to waive the unenforceability of the offer to purchase that otherwise results if the tax credits were not included in WHEDA's next allocation. That is, contrary to Acquisition's argument, there is no reasonable way to interpret the addendum references to the tax-credit contingency as in some sense confirming JT Klein's side of a bilateral right to waive the contingency. If the addendum controls how to apply all provisions dealing with tax-credit contingency in the offer to purchase, then JT Klein had the exclusive right to waive any such contingency before September 1, 2019. The issue then becomes whether the "next allocation" provision referenced in the form portion of the offer to purchase is subject to these addendum provisions.

¶36    It is true that the next allocation provision is located outside of the "buyer's" and "final contingencies" sections of the addendum. In itself, this could weigh toward considering the next allocation provision to fall outside the scope of the addendum provisions regarding who benefits from those contingencies and who has the right to waive them. Further, the issue is not resolved simply on the ground that the addendum trumps the "next allocation" provision, as JT Klein may

16

mean to argue, because it contains more detailed language. That is, while our analysis is consistent with application of the general rule that more specific contract language on a topic controls over more general language on the same topic, this case does not present a classic application. *See* ***Isermann v. MBL Life Assur. Corp.***, 231 Wis. 2d 136, 153, 605 N.W.2d 210 (Ct. App. 1999) ("Where there is an apparent conflict between a general and a specific provision, the latter controls."). It is not a classic application because the "next allocation" provision contains one detail (*i.e.*, that approval in the "next" WHEDA allocation is required) not addressed in the addendum and further it is not clear that any portion of the next allocation provision directly conflicts with any portion of the addendum.

¶37 However, we nonetheless conclude that interpreting the "next allocation" provision as separate from the tax-credit contingency provisions of the addendum would be unreasonable. Inherent in such an interpretation would be the unreasonable premise that the parties intended to create not one but two contingencies related to the WHEDA tax credits. One contingency (in the form portion) would address the topic in a relatively general way and the other (in the addendum) would provide a simultaneous, but separate and more detailed, set of directions on how to handle the tax credits. To construe these as two distinct contingencies would be unreasonable because it posits that the parties intended to leave unaddressed issues about how the next allocation provision operates that are addressed in detail in the addendum. This includes who applies for the credits, who can terminate the agreement if the credits are not obtained, who can waive failure to obtain the credits, and how either waiver or termination occur.

¶38 Further, the following additional features of the offer to purchase point toward harmonizing the next allocation provision with the addendum by

17

interpreting the next allocation provision as merely adding one additional detail to a single tax-credit contingency, subject to the addendum's specific instructions. The next allocation provision focuses on the same topic as one of the final contingencies—the awarding of tax credits by WHEDA for the development of the land to be sold. The addendum is specifically referenced as a source of additional contingencies. Indeed, it is the first reference in the section containing the next allocation provision. *See supra*, ¶34.

¶39    In addition, interpreting the tax-credit contingency as a singular topic in the offer to purchase makes sense because the next allocation language adds one detail to the otherwise more specific procedure for handling the tax-credit contingency laid out in the addendum. Together, the provisions establish that the buyer was to apply for the next allocation of WHEDA credits, and if the application was unsuccessful the buyer had until September 1, 2019, to unilaterally decide whether to waive that deficiency.

¶40    We turn to Acquisition's specific arguments in favor of its interpretation that the next allocation provision cannot be unilaterally waived by JT Klein. Acquisition briefly contends that ambiguities in the offer to purchase "must be construed against" JT Klein, because "Jacob Klein drafted the majority of the Offer, particularly Addendum A." *See Walters v. National Props., LLC*, 2005 WI 87, ¶14, 282 Wis. 2d 176, 699 N.W.2d 71 ("courts construe ambiguous language 'most strongly' against the drafter" (quoted source omitted)). However, Acquisition does not identify an ambiguity that could be construed against JT Klein. Moreover, Acquisition does not provide legal support for the general notion that this rule is to be applied when only some or much of the drafting of a document, as opposed to all of it, was performed by a party, much less does it provide support for the more specific application of the rule under the particular

circumstances here. Notably, the next allocation provision was not added by Jacob Klein. Instead, it was drafted into the form portion of the offer by Justin Oeth, an attorney whom Bova asked to review the offer to purchase, and the parties dispute who Oeth represented at the time.

¶41 We turn to Acquisition's position that the signed offer is unambiguous in *its* favor. Acquisition argues that it is unreasonable to interpret the next allocation provision as merely part of the addendum's description of a single tax-credit contingency. Acquisition contends that this interpretation would render the next allocation provision "meaningless, inexplicable, or mere surplusage." This argument is not entirely clear, but it apparently rests on the premise that aspects of the full text of the next allocation provision are irreconcilably in conflict with how the addendum addresses the topic of waiver of the final contingencies. We reject this premise. Acquisition focuses on the use of the word "project" in the next allocation provision, which it contends communicates an intent to enter into a *jointly operated* project. However, Acquisition provides no support from any place *in the four corners of the contract* that the term "project" refers to a joint venture of the buyer and seller. Further, Acquisition does not explain how the concept of a joint venture would necessarily require a reasonable reader of the contract to ignore the clearer and more specific provisions of the addendum that address the tax-credit contingency topic.

¶42 Acquisition also points to the fact that the next allocation provision states that "the offer" is contingent on the tax-credit allocation, and not that one party's performance is contingent. But this fact does not advance Acquisition's argument. It serves only to highlight the limited content of the next allocation provision in addressing the tax-credit contingency and does not create conflict between the "next allocation" language and the addendum. As we have explained,

19

the more detailed addendum terms must be consulted for a complete understanding of the tax-credit contingency.

¶43    As an alternative to its arguments based on the text of the next allocation provision, Acquisition argues that we may look to extrinsic evidence to determine who benefits from the existence of the contingency, which dictates who has the ability to waive the contingency.[9]    As one part of this argument, Acquisition points to the "general rule," *see* ***Godfrey Co. v. Crawford***, 23 Wis. 2d 44, 49, 126 N.W.2d 495 (1964), that "a party to a contract can waive a condition that is for his benefit," and its corollary that the party seeking unilateral waiver can do so only if the condition benefits the waiving party alone, *see* ***Goebel***, 83 Wis. 2d at 677 (a party's waiver cannot be unilateral when "the waiver would deprive the non-waiving party of a benefit under the provision in question"). As a specific justification for reliance on extrinsic evidence to determine who benefits from the next allocation provision, Acquisition purports to rely on cases addressing whether a provision of a contract should be understood to be a "condition precedent"—that is, whether one party's performance is contingent on satisfaction of the condition. *See* ***Kubly v. DOR***, 70 Wis. 2d 74, 78, 233 N.W.2d 369 (1975) (explaining that the question of whether to make performance "'contingent or otherwise, must be gathered from the language used, the situation of the parties, and the subject-matter of the contract, as presented by the evidence'") (quoted source omitted)).

---

[9] More precisely, Acquisition contends that extrinsic evidence "confirm[s] the plain language of the Offer." But we have already explained our plain language interpretation, which defeats Acquisition's arguments. All the same, in favor of Acquisition, we treat as a standalone argument Acquisition's reliance on extrinsic evidence regarding who benefits from the "next allocation" provision.

¶44    Much could be said regarding Acquisition's reliance on these cases, but the following is a sufficient basis to reject the argument. The argument, including the request that we resort to extrinsic evidence, rests on a premise that is inconsistent with our reasoning above. The faulty premise is that the addendum does not exist and in its absence the next allocation provision is ambiguous. Acquisition does not explain how, in interpreting the contract as a whole, the next allocation provision may reasonably be considered in isolation.

¶45    Explaining further, we see nothing in cases such as *Godfrey* and *Goebel* to suggest that a "general rule" can be applied to nullify unambiguous contract terms such as the waiver language in the addendum that we have determined is unambiguous. *See Goebel*, 83 Wis. 2d at 679 (noting its conclusion rested on "canons of construction" "designed to aid in the ascertainment" of the parties' intention, but that "necessarily yield to any contrary intention … ascertained from the contract as a whole"). As JT Klein notes, both *Godfrey* and *Goebel* addressed contract provisions that were silent both as to whether a particular party could waive them and as to whom the parties understood would benefit from the provision. *See Godfrey*, 23 Wis. 2d at 50; *Goebel*, 83 Wis. 2d at 679 (noting failure of mortgage note's drafter to include terms unilaterally permitting drafting party to change maturity date). Put differently, the principles noted in *Godfrey* and *Goebel* could be helpful in determining who must waive the next allocation provision only if the addendum did not already address that very issue and we have concluded that it does. Similarly, *Kubly* does not shed light on

this issue. There is no dispute that the offer to purchase was contingent on the next allocation provision, regardless of the addendum provisions.[10]

*Ownership Of The Buyer*

¶46    Although aspects of its argument are unclear, Acquisition appears to contend that another basis to affirm the circuit court's grant of Acquisition's motion for summary judgment rests on Acquisition purportedly having an ownership interest in JT Klein. More specifically, Acquisition appears to take the position that there is no genuine dispute of fact regarding the following: Acquisition had an interest in JT Klein equal to that of Klein Co. and, based on this interest, JT Klein could not waive any tax-credit contingency under the contract without Acquisition joining co-member Klein Co. in authorizing that waiver. This argument fails for at least two reasons. First, there are genuine issues of fact as to whether Acquisition ever actually acquired or purported to

_____

[10] We reject as undeveloped Acquisition's brief, unsupported argument that JT Klein failed to timely waive the tax-credit contingency, which would in theory provide an alternative basis for affirming summary judgment dismissing JT Klein's claims. Acquisition specifically points to the timing of Klein Co. submitting a second application for tax credits relative to events that include WHEDA's rejection of the earlier application, but without any explanation as to how this timing could affect JT Klein's ability to exercise its rights consistent with the waiver provisions in the addendum.

Moreover, whatever Acquisition means to suggest, the summary judgment record establishes beyond genuine dispute that JT Klein waived the failure to obtain tax credits in WHEDA's August 2018 allocation. This is so even setting aside JT Klein's explicit waiver of all "*diligence* contingencies," which under the addendum were separate from the list of "*final* contingencies" that covered the topic of WHEDA tax credits. Under the terms of the addendum, JT Klein retained the right to terminate the agreement if any of its "final contingencies" were not met. However, under the provisions of the addendum, JT Klein's failure to exercise this right by September 1, 2019, resulted in the automatic waiver of any unmet final contingencies. Further, these same terms require that any termination of the agreement based on an unmet final contingency be in a writing that explains which contingency is the basis for the termination, and there is no evidence in the materials that were before the circuit court that JT Klein created such a writing.

exercise such an interest in JT Klein. Second, Acquisition does not provide a developed argument that Klein Co. was unable to exercise control over JT Klein to waive the tax-credit contingency consistent with the terms of the offer to purchase.

¶47 The following additional background is pertinent to Acquisition's argument. Bova and attorney Oeth (who, to repeat, it is not disputed drafted the filled-in portions of the next allocation provision) testified to the effect that, at least during one phase of the negotiations, Jacob Klein and Bova planned for Klein Co. to form JT Klein as an entity that would be controlled jointly by Klein Co. and Acquisition. This plan was reflected in the letter of intent by Jacob Klein. It contemplated that Klein Co. would form a new limited liability company that would be held jointly and equally by Klein Co. and "Oakwood," without specifying whether "Oakwood" signified Acquisition or Ministries or both.[11] However, as noted above, the letter of intent was ultimately left unsigned by the parties. Further, it is undisputed that attorney Oeth conveyed to the parties a marked-up version of the letter of intent that made clear that even a signed copy would not be binding on the parties. Further, whatever the parties' subjective intentions, there is no dispute that Klein Co. formed JT Klein, with Klein Co. as the sole member, and never took active steps to bring in Acquisition as an additional member, equal to Klein Co. or otherwise.[12]

---

[11] We note that the letter of intent reflected that the new limited liability company would be the managing member of a separate (also new) entity, which would "own" the project. However, the parties make no arguments pertaining to this additional proposed new entity and we address it no further.

[12] Acquisition points out that there is no dispute that Bova signed an addendum portion of the offer to purchase as "Agent for Oakwood JT Klein, LLC." However, Acquisition does not develop a supported argument that this evidence could support an alternative ground for summary judgment in its favor. As noted in the text, there is evidence that neither Bova nor Acquisition ever became a member of JT Klein, and Jacob Klein testified in his deposition that Bova's

(continued)

¶48    Acquisition points out that Klein Co. prepared and certified the contents of the initial, ultimately rejected application for WHEDA tax credits on behalf of JT Klein, and that JT Klein was listed in the application as "an affiliated entity of" Acquisition. However, drawing all reasonable inferences in JT Klein's favor, this evidence at best merely reinforces the notion that the parties explored, during one phase of the negotiations, a proposal that Acquisition would obtain some interest in JT Klein, but that this proposal was not realized by the time the Ministries board member purported to terminate plans for the project.

¶49    Acquisition notes that there is evidence supporting the reasonable inference that Jacob Klein, after he received the project termination notice, treated at least some portions of the unsigned letter of intent as binding. Specifically, Jacob Klein sent an email to agents for Ministries noting that there was a provision in the letter of intent regarding a "termination payment" to which Klein Co. could be entitled. In this email, Jacob Klein purported to calculate what the fee would amount to as of that date. Acquisition apparently intends to argue that, based on this position taken by Jacob Klein, JT Klein cannot repudiate other terms of the letter of intent proposing that Acquisition would be granted an equal ownership interest in JT Klein with Klein Co. However, Acquisition does not make a

---

signature with this agency designation was required merely for the purposes of complying with some unspecified requirement of a planning application to the City of Madison.

Separately, we observe that, while we do not consider extrinsic evidence as part of our interpretation of the contingency on tax credits contained in the offer to purchase, we do consider extrinsic evidence in addressing Acquisition's argument regarding the ownership of the buyer. This is because the issue that Acquisition apparently intends to raise regarding the ownership of the buyer is not based on explicit terms of the offer to purchase. We interpret the offer to purchase to address the sale of land to JT Klein (or at least sale to a contemplated buyer operating under the same name) but not to address in an unambiguous way the identity of the buyer or its formation as an entity.

supported argument as to how Klein's position memorialized in the email could factor into summary judgment review of whether the offer to purchase was enforceable. At most, Acquisition insinuates a kind of estoppel or implied contract claim, but without actually developing such an argument. Further, in any case, Acquisition falls far short of showing that there are no genuine disputes of material fact relevant to any such claim.

## II. SANCTIONS

¶50 Acquisition cross-appeals the circuit court's denial of its motion for sanctions under WIS. STAT. § 895.044. Acquisition argues that the court erred in determining that Acquisition did not establish by clear and convincing evidence that JT Klein pursued this lawsuit in bad faith, *see* § 895.044(1)(a), and without a reasonable basis in law or equity, § 895.044(1)(b). We understand Acquisition to argue that the circuit court should have determined that both grounds are met here based on the only reasonable inferences from the evidence regarding the knowledge and conduct of JT Klein and its counsel in the lead-up to litigation and during litigation. Specifically, Acquisition makes two factual allegations in support of both grounds for sanctions that it suggests the circuit court was obligated to find: First, that Jacob Klein knew that Ministries officer Bova lacked authority to bind Acquisition to the offer to purchase; second, that, in an attempt to get around this fact of which he was aware, Jacob Klein gave false or misleading testimony on related topics. We affirm the circuit court's denial of the sanctions motion. We address pertinent legal standards, provide additional background, and

explain Acquisition's argument in more detail before explaining our conclusion further and rejecting Acquisition's arguments to the contrary.[13]

¶51     As pertinent here, under WIS. STAT. § 895.044(1), "[a] party or a party's attorney may be liable for costs and fees … for commencing, using, or continuing an action" based on one of the following grounds:

> **(a)** The action … was commenced, used, or continued in bad faith, solely for purposes of harassing or maliciously injuring another.
>
> **(b)** The party or the party's attorney knew, or should have known, that the action … was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification, or reversal of existing law.

Sec. 895.044(1)(a)-(b).  The party seeking sanctions carries the burden to establish either or both of these grounds by clear and convincing evidence.  *See* § 895.044(2).

---

[13] We note that the cross-appeal involving potential sanctions against JT Klein may present an unusual set of circumstances, given our decision in the appeal reversing the summary judgment granted to Acquisition dismissing JT Klein's claims.  One might wonder why our resolving the summary judgment issue in favor of JT Klein does not necessarily foreclose some or all of Acquisition's arguments that JT Klein should be sanctioned.  We now explain why there are distinct issues to be addressed in the cross-appeal regarding the sanctions motion.  The particular ground on which Acquisition pursues sanctions—its potential defense to the enforcement of the offer to purchase that its agent Bova did not have actual or apparent authority to sign it—is distinct from the contract-contingency-based grounds on which the circuit court granted summary judgment to Acquisition.  Further, in the circuit court Acquisition did not pursue the alleged lack of actual and apparent authority as a basis for summary judgment in *its* favor, which would have resulted in dismissing JT Klein's claims.  Instead, Acquisition argued that the alleged lack of authority was a basis to *defeat* JT Klein's competing motion for summary judgment.  Thus, Acquisition did not take the position in the circuit court that there are no triable issues of fact regarding Bova's authority, an omission that arguably creates tension with its argument for sanctions on the ground that JT Klein lacked any basis in law or equity to argue that Bova had actual or apparent authority.  But JT Klein does not now argue that this arguable tension matters to this cross-appeal and we deny Acquisition's cross-appeal for the separate reasons stated in the text.

¶52     We apply the following standards in reviewing the circuit court's denial of Acquisition's sanctions motion.[14]  As to both grounds for sanctions, we apply a mixed standard of review.  *See Stern v. Thompson & Coates, Ltd.*, 185 Wis. 2d 220, 236, 517 N.W.2d 658 (1994); *Juneau County v. Courthouse Emps., Loc. 1312, AFSCME, AFL-CIO*, 221 Wis. 2d 630, 639, 585 N.W.2d 587 (1998).  Under this standard we rely on the circuit court's findings of fact "unless they are against the great weight and clear preponderance of the evidence."  *See Stern*, 185 Wis. 2d at 236.  In contrast, whether certain facts "fulfill the legal standard" for either ground under WIS. STAT. § 895.044(1) is a question of law.  *See Stern*, 185 Wis. 2d at 236.

¶53     Continuing with standards, whether an action was "commenced, used, or continued in bad faith" under WIS. STAT. § 895.044(1)(a) is a subjective inquiry.  *See Stern*, 185 Wis. 2d at 236-37.  Under this approach, the circuit court must infer what the party or its attorney's state of mind was "from the acts and statements of the person, in view of the surrounding circumstances," and we "must accept a reasonable inference drawn" by the circuit court "from established facts if more than one reasonable inference may be drawn."  *Id.* at 236-37.

¶54     In contrast, courts use an objective inquiry to determine whether an action was "without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification, or reversal of existing law" under WIS. STAT. § 895.044(1)(b).  *See Juneau County*, 221 Wis. 2d

---

[14] Following the parties, we draw on case law interpreting former WIS. STAT. § 814.025, which was repealed by order of our supreme court in 2005, but was in many respects similar to the text of the present-day version of WIS. STAT. § 895.044.  Although there are some differences between former § 814.025 and the modern statute, the parties do not identify and we do not discern from these differences a basis to depart from the standards of review noted in the text.

at 638-39. This objective standard involves "'what a reasonable attorney would have known or should have known under the same or similar circumstances.'" *See id.* at 639 (quoted source omitted). The determination of what a party knew or should have known is a "factual question, and the circuit court's findings of fact will not be reversed by an appellate court unless the findings of fact are clearly erroneous." *Id.* (citing WIS. STAT. § 805.17).

¶55    JT Klein's amended complaint alleged that "[i]t appeared to [JT Klein] that Mr. Bova had authority to sign" the offer to purchase on behalf of Acquisition.

¶56    Jacob Klein gave deposition testimony or averred to all of the following on the topic of what he knew about Bova's authority to represent the interests of Acquisition in the proposed project. On June 20, 2018, a little over a week before Bova signed the offer to purchase, Bova informed Jacob Klein that Bova required the approval of the Ministries board before the project could move forward. This was the first that Jacob Klein had heard about a requirement of board approval. Jacob Klein suggested in an email to Bova that they enter into a "side" agreement in which further dealings could be contingent on obtaining board approval at a later date. On two occasions over the following several days, Jacob Klein asked Bova to teleconference with the Ministries board and get approval before the June 29 WHEDA application deadline. Jacob Klein assumed that Bova had gotten board approval when Bova sent him executed signature pages for the offer to purchase and land-loan agreement. In August 2018, the Ministries board member emailed Jacob Klein stating Acquisition's intent to terminate further development plans, and Jacob Klein called the board member. The board member did not raise the topic of whether Bova had authority to sign the offer to purchase

in the email or in the phone call. In April 2019, Bova told Jacob Klein that Bova had obtained the board's approval to sign the offer to purchase.

¶57 At least for the purposes of this cross-appeal, JT Klein appears to concede that no evidence has been produced to date that Bova ever in fact acquired the board's approval to bind Acquisition to the offer to purchase (aside from, perhaps, Bova's alleged statement to Klein in April 2019).[15]

¶58 At a hearing on Acquisition's sanctions motion, the circuit court made the following determinations. Regarding the "bad faith" grounds in WIS. STAT. § 895.044(1)(a), the court stated that it could not, "on this record alone, find that [JT Klein] started this litigation for purposes of harassing [Acquisition] by clear and convincing evidence." The court then proceeded to discuss whether JT Klein's lawsuit was "frivolous," which we interpret to be remarks related in part to whether JT Klein had a sufficient legal basis to avoid sanctions under § 895.044(1)(b). Specifically, the court determined that, even if JT Klein was "wrong as a matter of law" regarding whether its claims should survive summary judgment, this incorrect view did not constitute pursuit of a frivolous claim or litigation conducted in bad faith.

¶59 Regarding its bad faith claim under WIS. STAT. § 895.044(1)(a), Acquisition asserts that the circuit court did not make any findings as to what was in the minds of Jacob Klein or JT Klein's counsel in commencing and continuing

---

[15] To be clear, we express no opinion as to the potential merits of any argument either party might make following remand regarding any potential lack-of-authority defense by Acquisition against enforcement of the offer to purchase. This includes Acquisition's arguments that (1) Klein's deposition testimony that Bova told Klein in April 2019 that Bova had obtained board approval is hearsay and not subject to any hearsay exception and (2) Bova's later deposition testimony conflicts with Klein's.

this lawsuit against Acquisition. But this ignores the circuit court's explicit finding that JT Klein did not pursue its lawsuit with the intent to harass Acquisition. While the court did not go into detail, this finding is clearly at odds with Acquisition's assertions that Jacob Klein "formulated" factual allegations to adapt to Acquisition's defenses, suggesting intentional deception. It is Acquisition's burden to show that the circuit court clearly erred in finding that bad faith was not shown, but it fails to offer a developed argument that could satisfy that burden. It merely points to isolated allegations of fact and asks us to draw inferences that are critical of Jacob Klein and JT Klein's counsel, without showing why we should conclude that the circuit court could not reasonably reject such inferences.

¶60 The following is an illustrative example. Acquisition repeatedly references evidence that JT Klein, through Jacob Klein, appeared to take the position before litigation commenced that the unsigned letter of intent was enforceable (with respect to its termination fee provisions, as noted above), but then, after obtaining counsel, withdrew any demand under the letter and instead exclusively pursued enforcement of the signed offer to purchase. This is a far cry from showing that the court had to accept this as clear and convincing evidence of improper intent by Jacob Klein in commencing or pursuing this action. Assuming that this apparent change in position regarding the letter of intent was based on the advice of counsel, Acquisition does not begin to develop a supported argument that this demonstrates that Jacob Klein operated in bad faith, as opposed to simply gaining understanding and changing his approach based on the advice of legal counsel.

¶61 Turning to Acquisition's claim for sanctions under WIS. STAT. § 895.044(1)(b), Acquisition fails to show that the circuit court erred in

30

determining that JT Klein had a reasonable basis in law or equity to commence or pursue this action. Again, the court's discussion of this point was not extensive and did not explicitly address Acquisition's specific argument that JT Klein lacked a basis to believe that Bova had apparent or actual authority to bind Acquisition. However, Acquisition bears the burden to show that the circuit court erred in denying a motion that required proof by clear and convincing evidence and we conclude that it does not make a developed argument on this topic.

¶62 Ultimately, Acquisition fails to come to grips with the focus of WIS. STAT. § 895.044(1)(b), as applied here, on whether the party or attorney knew or should have known that "*the action*" lacked any merit, as opposed to beliefs regarding one of multiple legal theories or elements of theories pursued in support of an action. Acquisition does not support its apparent position that it is sufficient to show, as it strenuously argues, that there is no evidence that the Ministries board ever actually authorized Bova to sign the offer to purchase. Accepting this as true for purposes of resolving this issue, Acquisition must further show that JT Klein or its counsel knew or should have known that there was no basis to commence or continue "the action," including under a theory that Bova had apparent authority. However, so far as we can tell, in its briefing on appeal Acquisition does not substantively address the elements of such a claim or attempt to meaningfully apply them to the evidence it now points to on appeal.

¶63 Instead of addressing the substance of its theory that Bova lacked apparent authority, Acquisition merely emphasizes factual bases that may suggest ways in which it could at trial defend against a claim that Bova had apparent authority. For example, Acquisition notes that Bova and attorney Oeth testified that it was Jacob Klein who requested that the offer to purchase should not include a contingency requiring approval of the Ministries board. Depending on the

details, including potentially critical timing issues, if the testimony were credited it might contribute with other evidence to prove that Jacob Klein was aware that board approval was needed and had not been obtained. But these are merely potential pieces in a puzzle that is not fully formed. They do not establish that reasonable attorneys in the position of those representing JT Klein would have known or should have known that no reasonable jury could credit Jacob Klein's testimony as summarized above. In sum, Acquisition does not explain why the circuit court should have granted its motion based on more detailed findings derived from reliable evidence.

¶64 Acquisition's sanctions arguments all rest on negative characterizations of the timing and nature of Jacob Klein's testimony. But Acquisition fails to explain why the circuit court in considering the sanctions motion was obligated to weigh the credibility of Klein's testimony as Acquisition does, given the standards of review that Acquisition acknowledges are applied under WIS. STAT. § 895.044(1).[16]

---

[16] On a related note, Acquisition cites *Jandrt ex rel. Brueggeman v. Jerome Foods, Inc.*, 227 Wis. 2d 531, 555, 597 N.W.2d 744 (1999), for the proposition that JT Klein's counsel "do[es] not have an unfettered right to rely on … client statements for the factual basis of a claim." Acquisition argues that, had counsel for JT Klein adequately investigated Jacob Klein's assertions before filing suit, counsel would have discovered that aspects of his testimony were "easily refutable" and based on assertions that would have "never checked out." However, the substance of this *Jandrt*-based argument appears to be only the following: with adequate investigation counsel would have discovered grounds to find other witnesses more credible than Klein. Acquisition does not make a case that adequate investigation would have revealed that JT Klein had no basis in law or equity to commence or continue a claim that rested in part on a theory that Bova had actual or apparent authority to bind Acquisition.

## CONCLUSION

¶65    For all of these reasons, we reverse the circuit court's grant of Acquisition's motion for summary judgment dismissing JT Klein's claims, affirm the court's denial of Acquisition's motion for sanctions, and reverse for further proceedings consistent with this opinion.

*By the Court*.—Order affirmed in part; reversed in part and cause remanded for further proceedings.

Not recommended for publication in the official reports.